## Case No. 17,335.

### WEBSTER v. GILMAN.

[1 Story, 499.] [1]

Circuit Court, D. Maine. May Term, 1841.

RENUNCIATION OF DEVISE—NON-POSSESSION—ESTOPPEL—FEE SIMPLE AND FREEHOLD ESTATES—WRIT OF FORMEDON—CONVEYANCE BY DISSEISED LIFE TENANT — CONTINGENT REMAINDERS — MERGER.

1. A mere non-possession of real estate by the devisee under a devise, short of the period,

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[1] [Reported by William W. Story, Esq.]

prescribed by the statute of limitations to bar a right of entry, does not amount to a positive renunciation or disclaimer of the devise, or to proof thereof, on the part of the devisee.

2. Quære, whether by our law, any renunciation or disclaimer, not by deed or matter of record, would be an extinguishment of the right of the devisee. At all events, it should be evidenced by some solemn act or acknowledgment in writing, or by some such open and positive act, as will prevent all future cavil, and operate as a quasi estoppel.

3. A tenant in fee simple cannot maintain a writ of entry, founded upon his supposed seisin of a freehold only; for he has no such estate separate from the entire fee. But he must count according to the fact, upon his own seisin in fee simple. The same is the case with a tenant in fee tail; and his appropriate remedy is by a writ of formedon, and not by a writ of entry.

4. Where a devisee of a life estate makes a conveyance thereof, at a time when she is disseised of the premises, the conveyance is inoperative.

5. Where a devisee in remainder in fee purchases the life estate, he becomes tenant in fee simple, and the life estate becomes merged in the remainder.

6. Where there is a devise to A. for life, remainder to B. and C., to preserve contingent remainders, remainder to the issue of A. in tail male; there, if A. should renounce or disclaim the life estate, the subsequent remainders to B. and C. would immediately take effect, and so preserve the contingent remainder to the issue of A. in tail male.

Writ of entry, dated the 15th of February, 1838. The demandant [Henry Webster], describing himself as an alien, subject of Great Britain, and averring, that he had never been a citizen of the United States, or any part of the same, in his count demanded a certain tract of land, situated in Mercer, in the county of Somerset, and state of Maine, being part of the fifteen mile lot D. 2, formerly a portion of the Plymouth Company proprietary lands on the Kennebec, of which the demandant claimed to have been seised in his demesne as of freehold within twenty years, and complained of a disseisin done by the defendant [Caleb Gilman]. The tenant pleaded, that he did not disseise, &c.; and upon that, issue was joined, and the cause was committed to the jury. At the trial, the demandant proved, that lot D. 2, which, it was admitted, embraced the demanded premises, was originally granted and assigned by the proprietors of the Kennebec purchase, whose title was deduced from the ancient colony of New Plymouth, to Florentius Vassal, of London, his heirs and assigns, December 12th, 1770, according to a copy in the case, taken from the Proprietary Records, bk. 3, p. 22, in pursuance of a vote extracted from the Records, in same volume, pages 29–55.

Florentius Vassal made his will, disposing of this, among other portions of his estate, September 20th, 1777, and he died in the course of the following year. The will was proved (as appears by the copy filed in the case) in the prerogative court of Canterbury,

on September 14th, 1778; and an exemplification of it was exhibited, which had been filed and recorded in the probate office for the county of Kennebec, under the law of the state of Maine. By this will, the testator devised certain plantations in the Island of Jamaica, and also all his "lands, tenements, and hereditaments whatsoever, situate and being in New England, in North America, and all his estates, right, and interest therein," to the Right Hon. Hugh Lord Viscount Falmouth, the Right Hon. William Wildman, Lord Viscount Barrington, and Charles Spooner, Esquire, and their heirs, to the uses, and upon the trusts, and for the interests and purposes, and with, under, and subject to, the powers, provisoes, and declarations thereinafter limited, declared, and expressed, as to, for, and concerning one of the aforesaid plantations, called "Sweet River," &c., and also as to, for, and concerning all my lands, tenements, and hereditaments whatsoever, situate, lying, and being in New England aforesaid, as follows: To the use of his son Richard Vassal and his assigns for and during his life; and from and after the determination of that estate by forfeiture or otherwise, during the life of the said Richard, to the use of the said trustees and their heirs, during the life of the said Richard, in trust to preserve the contingent uses and estates thereinafter mentioned from being defeated or destroyed; and for that purpose to make entries and bring actions, as occasion shall be or require, &c.; and from and after the death of the said Richard, to the use of all and every the son and sons of the body of the said Richard, begotten or to be begotten, to be equally divided between or among his said sons, if more than one, share and share alike, and they to take as tenants in common, and not as joint tenants, and the several and respective heirs male of the body and bodies of such son and sons, there being more than one; and on failure of such issue male of his or their body or bodies respectively, then as to the part and share or parts and shares of and in the said premises, as well originally belonging to, or accruing, or devolving upon such son or sons by survivorship, the same shall, so often as it shall happen, go and remain unto and to the use of the survivors and survivor and others and other of the said sons, and to the heirs male of the bodies and body of such surviving and other sons, if more than one, to take in equal shares as tenants in common, and not as joint tenants, and if the issue male of all such sons save one shall fail, or if there shall be but one son, then to such or remaining son and the heirs male of his body issuing; and for default of such issue, to the use of William Dickenson and William Smith, and the survivor of them, and the executors, administrators, and assigns of such survivor, for the full end and term of six hundred years, to commence and be computed from the failure of such issue male of the said Richard, and

thenceforth fully to be completed and ended, without impeachment of waste, upon the trusts for the intents and purposes, and under and subject to the provisoes thereinafter expressed, of and concerning the same term; and from and immediately after the end, expiration, or other soever determination of the said term, and in the meantime, subject thereby and to the trusts thereof, to the use of Elizabeth Vassal, the then only daughter of the said Richard Vassal, and her assigns for and during her life, and from and immediately after the determination of that estate by forfeiture or otherwise, during the life of the said Elizabeth, to the said trustees, Lord Viscount Falmouth, Lord Viscount Barrington, and Charles Spooner, and their heirs, during the life of the said Elizabeth, in trust by the ways and means before mentioned to preserve the contingent uses and estates thereinafter mentioned from being defeated or destroyed, &c. &c.; and from and immediately after the decease of the said Elizabeth, to the use of all and every the son and sons of the said Elizabeth to be begotten, to be divided amongst such sons, if more than one, share and share alike, and they to take as tenants in common, and not as joint tenants, and the several and respective heirs male of the body and bodies of all and every such son issuing; and in case of the decease of any such son or sons, there being more than one, and failure of such issue male of his or their body or bodies respectively, then as to the part or share or parts or shares of and in the said premises, as well originally belonging to, as accruing or devolving upon such son or sons by survivorship, the same shall from time to time, as often as it shall so happen, go, remain, and accrue unto the use of the survivors and survivor, others and other of the said sons and the heirs male of the body and bodies of such surviving and other son and sons respectively, such surviving and other sons, if more than one, to take also in equal shares as tenants in common, and not as joint tenants; and if the issue male of all such sons save one shall fail, and if there shall be but one such son, then to such one or remaining son and the heirs male of his body issuing; then to the use of the second and every other daughter and daughters of the body of the said Richard, &c. &c. Richard Vassal died about the year 1795, leaving only one child, Elizabeth Vassal, who afterwards intermarried, first, with Sir Godfrey Webster, deceased, by whom she had issue, two sons, viz. Sir Godfrey Vassal Webster, since deceased, and Henry Webster, the demandant. The said Elizabeth afterwards, in the year 1797, married Richard Henry Fox, Lord Holland, by whom she had issue, one son, Henry Edward Fox. The pedigree, &c. were proved by the depositions of Charles Rose Ellis, Baron Seaford, &c. and William Hughues Brabant, Esq., solicitor, which are in the case. Brabant testified, that all the charges

upon lands devised by the will (which were designed to raise portions for younger daughters of Richard, and certain annuities) had been, to the best of his knowledge and belief, discharged or satisfied; and that there were no outstanding terms under the will unsatisfied; and that those lands were not now subject to any life estate, other than that of Lord and Lady Holland; nor to any estate for years, created by the last will of Florentius Vassal. To such facts as he testified to, he came to the knowledge by being solicitor to the late Sir Godfrey Webster, last deceased, and Colonel Henry Webster, the plaintiff, and from documents in his hands, as their solicitor, and in relation to the above facts particularly from personal inquiries made by him, as such solicitor. To which testimony objections were taken at the trial, as incompetent; but for the purposes of the trial they were overruled.

Lord Seaford testified, that he was acquainted with Richard Vassal from about the year 1779 until he died, about the year 1795; that he was acquainted with Elizabeth Vassal, now Lady Holland, and her family; that he had resided at different periods in the Island of Jamaica, where the plantations devised by the will of Florentius Vassal lay; that these plantations were held pursuant to the will of Florentius Vassal, and continued to be held and possessed under the same, by Lady Holland or her husband, Lord Holland; and that the former lands of the said Florentius were not, to his knowledge, subject to any life estate, other than that of Lord and Lady Holland, or to any estate for years, created by the will of the said Florentius. To which testimony, also, objections were taken at the trial, as incompetent; but for the purposes of the trial they were overruled. The facts stated by Lord Seaford, so far as they did not lie within his own knowledge, he derived from general reputation, and what he always understood, and heard, and believed, at the different times referred to, from members of the family of Richard Vassal and Lady Holland, and persons connected with it.

The demandant's counsel introduced a deed from Lord and Lady Holland, bearing date the 30th of January, 1836, releasing and surrendering to the demandant all her right to the premises, which was duly acknowledged and recorded, and the execution proved by one of the attesting witnesses. And he also proved an entry upon the premises by Sylvanus W. Robinson, Esq., on behalf of the plaintiff, November 3d, 1837.

The defendant produced the testimony of witnesses to prove his possession of the property, and to disprove the seisin of Lord and Lady Holland at the time of the execution of the said deed, and for a period long prior thereto. Asa Clark testified, that in the year 1798, when he first became acquainted in that vicinity, the said [Caleb] Gilman was then making improvements on the land by clearing the same; that there

were trees cut on the said lot, which must have been cut as early as June, 1797; that in 1799, the said Gilman claimed all the land, which he now occupies; that the witness then knew the lines, which embraced that claim, and has no reason to doubt, that he claimed the same, when he first began his improvements, as supposed in 1797, and that Gilman moved his family on to the land in the spring of 1801. John Longley testified, that in June, 1798, or 1799, he put up a barn frame for the said Gilman on the land; and at that time he had made considerable improvement on the place by clearing and cultivating the land and raising crops, and that from the appearance some one must have been there occupying the place, as a farm, at least two years; and that the said Gilman had been in possession of the same land ever since the putting up of the barn frame. Simeon Robbins also testified, that he had known the lines of the said Gilman's farm for thirty years; they were visible and clearly indicated and embraced the land, which had always been occupied during that time; and the larger part of it had been surrounded by fences, since he first had knowledge of it. William Farnsworth testified, that he assisted the defendant in moving his family on to that farm, in March or April, 1801; at which time he had buildings erected on the farm; and previous to that time the witness had been on the premises and seen improvements making thereon by the clearing of the land. The same witnesses testified generally, that this possession, so far as they respectively know, was open, notorious, exclusive, and comporting with the ordinary management of similar estates in the possession and occupancy of those, who have title thereto, or satisfactorily indicative of such exercise of ownership, as is usual on the improvement of a farm by its owner. A verdict was thereupon taken for the tenant under direction of the court, and the cause continued nisi for the consideration of any questions of law, arising upon the effect of the provisions of the will, and the facts proved in the case. The argument of the counsel for the tenant was then in part heard, but upon an intimation of the court, that there was a fatal objection to the suit, the counsel declined to argue further.

E. E. Daveis and Charles S. Daveis, for demandant.

Tenney & Preble, for tenant.

The argument for the demandant was to the following effect: The tenant relies upon his possession of the premises for forty years, as proof of title in him. At common law the person, having the right of property, could pursue his remedy at any time. If the right is taken away, it must be by statute. But the statute of limitations (Laws Me. c. 62, § 4; 1 Laws Mass. p. 325,

c. 13, § 4), does not begin to run against a party, until his right of entry accrues. Such are the terms of the statute. We expect to show, that a right of entry has accrued to the demandant within the period limited; and we make the point, that adverse occupancy, not commencing in the lifetime of the testator, will not prevent the right of entry from accruing to him in remainder. Hunt v. Burn, 2 Salk. 422; S. P. 1 Salk. 339; Doe v. Danvers, 7 East, 299; Wells v. Prince, 9 Mass. 508; Wallingford v. Hearl, 15 Mass. 471; Stevens v. Winship, 1 Pick. 318; Jackson v. Schoonmaker, 4 Johns. 390. We shall next endeavour to show, that a right of entry has accrued to the demandant; although there is no evidence of the death of Elizabeth, we contend, that there is evidence, that she refused the estate devised. And when the devisee of a particular estate refuses, he in remainder may enter immediately. Shelley's Case, 1 Coke, 101; Chedington's Case, Id. 154; Vin. Abr. "Remainder," C 2, pl. 2; Plowd. 544; 1 Eq. Cas. Abr. 216, pl. 4; Bac. Abr. "Remainder and Reversion," E. The refusal of the estate devised renders that portion of the devise absolutely void, and the estate must go immediately to him in remainder. Avelyn v. Ward, 1 Ves. Sr. 420; 2 Brownl. 247. He may enter immediately, although this is not according to the terms of the devise. As indeed it must generally happen. In this case the words are (after giving a life estate to Elizabeth Vassal), "And from and after her decease to the use of her sons," &c. The law construes this to mean, from and after the termination of her life estate. In neither case does the law require a strict adherence to the letter of the devise. Since in the former the remainder-man must permit strangers to occupy the land, until the death of the tenant for life. And in the latter, he must wait until the termination of a life estate, which never commenced. In either case the intention of the testator would be defeated by interpreting literally his own words.

Such a construction has been put upon the words limiting an estate upon the termination of an estate tail, where the remainder is limited to take effect "upon the death of the tenant in tail without issue," or "upon failure of issue," or "for want of such issue." In these cases, where the devise in tail has become void by the devisee dying in the life of the testator, those next in remainder have not been compelled to wait, until the death of the issue of such tenants in tail, which would be the strict construction of the terms of the devise; but those terms have been held merely descriptive of the estate previously limited, and, this estate being void, the subsequent limitation takes place. Hutton v. Simpson, 2 Vern. 722; Hartopp's Case, Cro. Eliz. 243; Wynn v. Wynn, 3 Brown, P. C. 95; Goodright v. Wright, 1 P. Wms. 397; s. c. 1 Strange, 25, 10 Mod. 370;

Hodgson v. Ambrose, 1 Doug. 337; Warner v. White, 3 Brown, P. C. 435, same law. As was said by Lord Mansfield in Hodgson v. Ambrose, so we say, that the words, "and after the decease of the said Elizabeth," mean the same thing as, "and after the termination of the said life estate"; and that this is the common case of a remainder after a life estate, where, if the devisee for life first estate never takes place, he in remainder may enter immediately. Fuller v. Fuller, Cro. Eliz. 422, 423.

The principle, (which is the same in estates tail and for life,) which we contend for, as established by the authorities cited, is this: That where a particular estate is given by devise, and a remainder over is given, whether the remainder is limited in general terms, upon the termination of the particular estate, or is limited in terms, descriptive of the mode, in which such particular estate usually determines, and it turns out, that the particular estate is void, the estate in remainder shall vest in possession immediately. The intention of the testator to give a general remainder shall not be defeated by the particular words; but they are construed as descriptive of the estate previously limited, and not as forming a condition precedent to the vesting of the estate in remainder. Thus, as estates tail are usually determined by the "death of the devisee without issue," "by the failure of issue," &c. it is held, that the limitation to the remainder-man upon these contingencies must be construed as a general remainder over. And we contend, that the remainder over in the present case should be construed in the same way, since estates for life are usually determined by the death of the tenant for life. Taking it to be established, that the demandant's right of entry accrued upon the refusal of Elizabeth Vassal to take the estate, we proceed to the consideration, in what manner and at what time this refusal was given.

No precise form is necessary to constitute a refusal or disclaimer of a devise. It was formerly said, that it must be evidenced by matter of record, and it was held in Crewe v. Dicken, 4 Ves. 97, where there was a devise to trustees, and one of them released and conveyed his right to his co-trustee by deed, that this was not a good disclaimer of the trust. The same law was attempted to be maintained in Nicloson v. Wordsworth, 2 Swanst. 365; but Lord Eldon held the release by deed sufficient to enable the remaining trustees to act alone. It is not necessary, that the disclaimer should be by matter of record; neither must it be by deed. Bonefant v. Sir Richard Greenfield, 1 Leon. 60, Cro. Eliz. 80; Smith v. Wheeler, 1 Vent. 128; 4 Kent, Comm. 533; Shep. Touch. "Testament," p. 452; Townson v. Tickell, 3 Barn. & Ald. 31. Any acts of the devisee, which evidence unequivocally his intention to refuse the devise, will amount to a disclaimer of the devise. Plowd. 543; 1 Pow. Dev. 429; 5 Bart. Conv. 192; Ward v. Ward, 15 Pick.

511, 525. This is apparent in the familiar case of a testator, devising to a third person property, claimed by another devisee under the will, and the devisee still claims the property in opposition to the will. This act is a waiver or disclaimer of the benefit of the devise. So, in all other cases of implied conditions, if the devisee neglects to comply with them, the law presumes, that he does not accept the devise. So, in all cases of election. Upon the most thorough examination, which we have been able to give to this point, we do not find, that the refusal of a devise is governed by principles at all different from those governing the refusal of an estate conveyed by deed poll, or any other onesided contract, viz. to make it binding, the grantee must accept it; and whatever evidences, that he does not accept, is a valid disclaimer. This is a rule of such simple common sense, that it may seem a waste of time to cite so many authorities, in support of it. But ever since Crewe v. Dicken, the point has been a subject of grave doubt with the judges, and is marked with a query by the reporters. And yet there are but two decisions, which are not in accordance with it; and they are perfectly reconcilable to it, viz. Crewe v. Dicken, which went on the ground, that there was an acceptance by the trustee (which is opposed to Nicloson v. Wordsworth) and the case of Doe v. Smyth, 6 Barn. & C. 112.

These cases have been allowed to throw a cloud over the point, so that it has been considered doubtful, whether a man could by will fasten an estate upon another, from which he could not free himself without trouble and expense. Chancellor Kent merely says, that a man is not bound to accept a devise to him nolens volens. According to the rule, for which we contend, a verbal refusal, or acts showing an intention to refuse, or a passive refusal, are all good disclaimers of an estate devised, provided they evidence the intention unequivocally. Elizabeth Vassal disclaimed the devise of the land in dispute by positively refusing to accept it. She utterly neglected to take any steps to secure the land devised, or in any manner to take or claim any benefit from the land, until her right to do so was taken away by the statute of limitations. It is difficult to conceive a more deliberate refusal of a devise than such conduct evinces,—a refusal in fact. And the law would imperatively imply a refusal, under such circumstances, on the ground, that it is thwarting the intention of the testator; for nothing could be more directly opposed to it, than that the lands should go into the possession of a stranger, because the devisee would neither take them herself, nor, by a formal disclaimer, suffer the devise over to take effect. There are several reasons, why this period should be fixed upon, as that at which the refusal of the devise is evidenced; and we therefore make the point, that when the devisee of a particular estate neglects to enter, until he is bound by the statute of limitations, this amounts to a refusal of the

devise. One very obvious reason in its favor is, that it is the period, at which the devisee suffers all practicable means of asserting his right to drop, since a devise is utterly without remedy, when the right of entry is gone. Practically, a devisee takes nothing but a right of entry. Secondly, it defeats the intention of the testator to suffer a stranger to enjoy an estate, which he wished to keep in a particular line. Thirdly, it takes away the right of the remainder-man, since the disseiser can commit waste, to the utter destruction of the estate in remainder, and there could be no legal remedy against him; he claiming the fee, and no one else having a right to enter upon him. And this rule is supported by authority. Wells v. Prince, 9 Mass. 508.

This brings us to the consideration, at what time the right of entry of Elizabeth Vassal was lost. 1 Laws Mass. p. 238, c. 13, § 4, and Laws Me. c. 62, § 4. By the enactment, she had twenty years, from the time the adverse occupancy commenced, to exercise her right, and by the proviso in favor of persons beyond seas, she had ten additional years. It appears, from the evidence, that Gilman began to occupy the land in 1798, therefore Elizabeth Vassal's right expired in 1828; and then, as we contend, and according to the above case, a right of entry accrued to the demandant, Webster, which he had twenty years to improve; and accordingly entry was made on the land, on his behalf, by Robinson, November 3d, 1837. If the court rule, that this point is not sustainable, but that a shadow of right still abides in the tenant for life, sufficient to prevent the entry of the remainder-man, then we ask the consideration of the court to the question, whether it is possible for the particular tenant, in any mode, to refuse the devise after her right of entry is gone. If not, whether this is not an additional reason for confirming the rule laid down in Wells v. Prince. If it is in her power to disclaim, a disclaimer by deed is certainly a good one, according to the authorities. And we offer the deed of Lord and Lady Holland, by which they released to the remainder-man all their interest under the devise. This deed cannot operate as such, since there was no seisin in Elizabeth; but it may operate as a disclaimer, or a refusal; that is, though it cannot convey a right, it can remove an impediment to the enjoyment of this right. Goodtitle v. Bailey, Cowp. 600; Shep. Touch. 79; Jackson v. Schoonmaker, 2 Johns. 233, 234. This deed would operate as a disclaimer of the devise, if such a disclaimer is adequate to effect the intention of the parties. Under it, a right of entry accrued in 1836 to the demandant as reversioner, and his right was perfected by an entry made on his behalf in 1837.

STORY, Circuit Justice. This cause has been very well argued; but, upon the actual posture of the pleadings and evidence, we do not entertain any doubt whatsoever, that our judgment ought to be for the tenant. The writ is a writ of entry, brought by the demandant, counting upon his own seisin within twenty years, as of a freehold; and upon the general issue of nul disseisin, the cause came on for trial. The title of the demandant may be shortly stated, as arising in this manner. Florentius Vassal (his ancestor) being on the 20th of September, 1777, seised of the demanded premises, made his will, and thereby devised the same to Lord Viscount Falmouth, Lord Viscount Barrington, and Charles Spooner and their heirs upon certain trusts, viz. to the use of his son, Richard Vassal, and his assigns for life, and upon the determination of that life estate by forfeiture or otherwise, to the use of the trustees, during Richard's life, to preserve contingent remainders, and, after the death of Richard, to the use of his sons, as tenants in common, in tail male, with cross remainders among all the sons, if more than one; and upon default of such issue male, if any, and all of the sons, to William Dickenson and William Smith, and the survivor of them, his executors, administrators, and assigns, for a term of years, upon certain trusts, not necessary to be stated, and which are admitted to have been completely satisfied; with remainder, subject to the term, to Elizabeth Vassal, the then only daughter of Richard, for her life; remainder to the original trustees, Lord Falmouth, Lord Barrington, and Charles Spooner, to preserve contingent remainders; remainder to the sons of Elizabeth, as tenants in common, in tail male, with cross remainders; and upon failure of such male issue upon certain other limitations over. Richard Vassal died without leaving any issue male; and thereupon according to the terms of the will, Elizabeth Vassal (now Lady Holland), his daughter, became entitled to a life estate. The demandant is her only surviving son, and of course is entitled, as heir in tail in remainder, subject to her life estate. Lady Holland by her deed in the case, conveyed her life estate in the premises to her son, Henry Webster; and he now claims title thereto under that deed in the present writ of entry.

In the first place, then, upon the posture of the facts, it is plain, that the deed of Lady Holland was wholly inoperative as a conveyance, because at the time of the execution thereof, Lady Holland was disseised of the premises; and, by the common law, which is our law, seisin is indispensable to the due validity and operation of such a deed of conveyance. But, then, it is said, that Lady Holland, in fact, never accepted the life estate in the premises under the will, but waived, or refused, or disclaimed the same; and that her acquiescence for so long a period, without asserting any right of entry or possession, is a sufficient proof thereof. We see no reason in the facts of the case, upon which such a conclusion can be legitimately founded. On the contrary, her deed to her son is cogent evidence, that she did assert her title under the will, and meant (although ineffectually in point of law) to convey that title by her deed to her son. We know of no rule of law, by which a

mere naked non possession, or non exercise of the right of entry and possession of real estate under a devise, short of the period, prescribed by the statute of limitations to bar a right of entry, is held to amount to a positive renunciation, or disclaimer of a devise, or to proof thereof. It may be even doubtful, whether under our laws any renunciation, or disclaimer, not by deed or matter of record, would be an extinguishment of the right of the devisee. But, at all events, it should be evidenced by some solemn act or acknowledgment in writing, or by some open and positive act of renunciation, or disclaimer, which will prevent all future cavil, and operate in point of evidence, as a quasi estoppel.

In the next place, if Lady Holland had renounced or disclaimed her title to the demanded premises under the devise, how could that help the demandant? The determination of her estate by such a renunciation or disclaimer, will amount to no more than a determination thereof in her lifetime, in the sense of the will. And what then would be the effect? It would vest the demanded premises in the trustees to preserve contingent remainders during her life, leaving the remainder in tail male to her issue; that is, leaving the demandant, Henry Webster, tenant in tail in remainder. There is no pretence to say that the trustees have renounced their trust estates. They, therefore, under such circumstances alone would now be entitled to maintain a writ of entry, for the recovery of the premises, founded upon their freehold. So that, in point of law, in either view, the present writ of entry brought by the demandant upon his own seisin of a supposed mere freehold, is entirely disproved by the facts; for the freehold is not in him, but in Lady Holland, or in the trustees.

In the next and last place, (to view the case most favorably for the demandant, according to the argument,) if the life estate of Lady Holland could be treated as determined, or extinguished, and the estate of the trustees, to preserve contingent remainders, were merged in the remainder vested in the demandant, there would still be a fatal objection to the present writ of entry, since it is founded upon the seisin of a mere freehold by the demandant; whereas, in point of fact, he would, if seised at all, be, under such circumstances, seised of a fee tail. The writ is not, therefore, supported by the evidence, or adapted to this case. A tenant in fee simple cannot maintain a writ of entry founded upon his supposed seisin of a freehold only; for he has no such estate separate from the entire fee. But he must declare according to the truth of the case upon his own seisin in fee simple. A tenant in fee tail is in a similar predicament. He is in no just sense seised of a freehold only; but of a fee tail. His appropriate remedy is by a writ of formedon; and not by a writ of entry, founded upon a mere freehold. The writ, therefore, varies from the title, and is not maintainable.

For these reasons we are of opinion, that judgment ought to pass for the tenant in this suit.