ROBERT B. WALLACE *v.* EXECUTORS, ETC., OF CHARLES McMICKEN, DEC'D, ET AL.

(No. 9,848.)

1. The bequest of an annuity to A., in trust for the use and benefit of his wife and *family* during the life of the said A., does not include A. as a beneficiary, in the term family.

2. A grantee or devisee may disclaim a grant or devise whereby the estate will descend to the heir or pass in some other direction.

3. The disclaimer of a bequest or devise, set up in an answer in a legal proceeding, will be sufficient as an estoppel against him forever.

SPECIAL TERM.—Proceeding by the plaintiff as a judgment creditor of Andrew McMicken, to subject whatever interest or estate McMicken may be entitled to under the will of his uncle, Charles McMicken, deceased. The provisions of the will are sufficiently stated in the decision of the Court.

*Stephen Clark*, for plaintiff.

*W. B. Caldwell*, for McMicken.

*Thos. M. Key*, for the executors, etc., of Chas. McMicken.

STORER, J. The object of this bill is to charge whatever estate, real or personal, vested by law in Andrew McMicken, under the will of Charles McMicken, deceased.

The plaintiff is the judgment creditor of Andrew McMicken, who is represented as possessing no property that can be reached on execution.

We have been referred to several clauses in the will of Charles McMicken, which, it is claimed, give to Andrew McMicken, either legal or equitable interests that we may charge with the payment of the plaintiff's judgment.

First, our attention is directed to the fourth article, which devises several small tracts of land to Andrew McMicken, the testator's nephew, "for the use and benefit of his wife, Rachel Ann; and, after her death, to her children in fee, with power, on his part, to sell and dispose of the same at his discretion."

This, we have no doubt, is a specific devise, of all the property described, for the benefit of the *cestui qui trust,* who, not only will be protected in the estate vested in the trustee, but may follow the proceeds of the estates sold or disposed of by him, into any other property, where the same may be invested, and ask the aid of a court of equity to restrain improvident sales or improvident investments, and, if necessary, should the trustee fail to perform his duty, or become incapacitated, to interpose, by decree, in the appointment of a new trustee, or to take such steps as may be required to effectuate, in the fullest extent, the testator's intention.

The trust created for the wife of Andrew McMicken, imparts no power to him to collect the rents, or to interfere with her rights on the ground of marital relations. Whatever authority is given to the husband by the common law, either for the life of his wife or by curtesy after her death, is taken away by statute. Swan's Stat. 712, 713.

For all practical purposes, unless he acts by the consent and permission of his wife, a husband in Ohio is not her agent, even in the management of her separate estate. He has no interest therein that can be sold on execution or alienated by himself.

Nor is there any legal objection to the appointment of the husband to act as trustee of his wife; nor even for his selection by her to act as her agent. Where there is no fraud, where creditors are not injured, we think, there is manifest propriety for such a course to be pursued. It maintains confidence between the parties, while it strengthens the moral ties which are necessary to the happiness of domestic life.

By the eighth clause of the fourth article, "all the debts now due me in Cincinnati, New Orleans, or elsewhere, by

judgment, bond, note, accounts or otherwise, all the rents, issues, and profits, which, at the time of my death, may be due me from the land, specifically devised to my said nephew, Andrew McMicken; my horses and carriages; all my library, and household furniture of every description, and any other personal property not hereinafter specifically devised, which said library, furniture, and personal property shall be equally divided by the said Andrew McMicken with my niece, Lizzie McMicken."

This clause, in our judgment, vests in Andrew McMicken, for the joint benefit of himself and Lizzie McMicken, the library, furniture, and other personal property not specifically devised. The other portions of this clause, which refer to the debts, rents, etc., we must hold, passed under the general trust to Andrew McMicken for the benefit of his wife and children. This necessarily follows, we think, from the expressed intentions of the testator. We find it pervading the entire will. The object evidently was to secure this property, devised, to the wife and children of the testator's nephew, and not to vest any estate in Andrew McMicken which could be charged with his debts; and the connection between the several clauses of this very naturally leads to the conclusion that the testator's object was to include in the eighth clause all the personal property, except the library, furniture, and personal property not afterward specifically devised as pertaining to the trust before created; the proceeds of which the trustee could only manage for the benefit of his wife and children.

Nor can the words, " the said personal property," at the conclusion of the eighth clause, be construed to include the rents, the debts, and choses in action previously described. The fact is very obvious the testator must have intended to refer to the statement in the seventh line, " any other personal property not hereinafter specifically described," thereby limiting the meaning of the terms used in the eighth and ninth lines. Moreover, the general words at the commencement of the fourth article must be construed to vest

all the property specifically described in the subsequent clauses of Andrew McMicken's will, unless there is a direct and manifest purpose to except it. We find no such intention, but, on the contrary, the only reservation made by the testator is that which excepts the library, furniture, etc., from the general devise.

The permission granted in the ninth clause of the fourth article to Andrew McMicken to occupy the testator's mansion for five years, without rent, depends entirely upon the disposition of the devisee to accept the gift. It must, unless it has actually vested by the possession of the devisee, or some equivalent act, significant of his right to the ownership of the term, be regarded as an interest liable to be subjected by a creditor; and how far the estate could then be reached for the payment of debts would depend upon other questions, growing out of the exemption laws, which we are not now required to decide.

By the seventh article the testator bequeathed " to Andrew McMicken, in trust, for the use and benefit of his wife and family, during the life of the said Andrew, and not to be subject to any debts due by him now or hereafter contracted, the annuity or yearly sum of $1,500, payable semiannually."

This bequest is said to be charged with the debts of Andrew McMicken, on two grounds.

*First.* That the testator's real intention is to secure to his nephew a yearly income, through the intervention of his wife and children, and thus give indirectly an annuity, which, if devised directly by him, would be subject to his debts. If the trust had been created by Andrew McMicken, conveying his own property for such a purpose, the objection would have been doubtless a valid one; for in such a case his creditors might well have complained that they have been delayed or hindered in the recovery of their debts, or deprived entirely of any remedy in the ordinary course of law. But this is not the rule when a testator bestows his bounty, as it is optional with him who shall enjoy his

bequests; he may limit them as he pleases, and direct their application as it shall appear best to himself. No creditor but his own can thus be defrauded by the exercise of his partiality or caprice, and the manner in which he may direct his estate to be appropriated furnishes, therefore, no. ground for our interference.

In the case before us the testator might have given the annuity directly to the wife of his nephew and her family, and our statute would have protected them in its enjoyment to the exclusion of the husband; and the intervention of the husband's name to sustain the trust for their benefit does not, as we apprehend, make any difference in the principle.

*Second.* The plaintiff's counsel very ingeniously refers to the word "family" as indicating the purpose of the devise, and seeks to include the husband within the term as composing, in legal contemplation, an integral part of the description, and, therefore, entitled to share in the testator's bounty.

We think the assertion, in the case before us, can not be properly made. There may be cases where, from the context as well as the whole will, when reference is made to the subject, we might fairly conclude a testator intended to include the husband within the term family, but the purpose must be very clear. Here there is an express wish, pervading the entire will, that the creditor of the devisee should not be permitted to subject the property devised. It is obvious, therefore, there could be no such purpose if the devisee should be included in the terms of the bequest.

The word "family" is narrowed or enlarged, in some instances, to include *near kindred* in other *heirs*, or to embrace *relations* by *marriage*. 2 Jarman on Wills, 25, in note; and in 2 Williams on Ex'r, 819. But we can find no case where the husband is properly included within the description; on the contrary, in *MacLeroth* v. *Bacon*, 5 Ves. 167, the Master of the Rolls, while he considered the husband is properly included in the case before him, expressly

says that the word family can not, as a general rule, be held to mean the husband.

In *Blackwell* v. *Bull*, 1 Keen, 181, the Master of the Rolls very plainly states the true rule. "The word family is capable of so many applications, that if any one particular construction were attributed to it in wills, the intention of testators would be more freqently defeated than carried into effect. Under different circumstances, it may mean a man's household, consisting of himself, his wife, children, and servants; it may mean his wife and children, or his children, excluding the wife; or, in the absence of wife and children, it may mean his brothers and sisters, or his next of kin, or it may mean the geneological stock from which he may have sprung. All these applications of the word are found in common parlance, and in the case of a will, we must endeavor to ascertain the meaning in which the testator employed the word, by considering the circumstances and situation in which he was placed, the object he had in view, and the context of the will." See also the elaborate opinion of Lord Eldon in *Wright* v. *Atkyns*, 1 Turner and Russ. 156; *Grant* v. *Lynam*, 4 Russell, 292, and *Liley* v. *Hey*, 1 Hare, 581. These later decisions, fully sustaining the reasons on the same question of the Master of the Rolls in *Barnes* v. *Patch*, 8 Vesey, 605, and *Cruwys* v. *Coleman*, 9 Ves. 319.

After a very careful examination of the whole will, to aid us in giving a construction to the clauses we have been referred to, we are satisfied nothing passes to A. McMicken but the scholarship in Farmer's College, devised in article third, the moiety of the household furniture, library, and such personal property as had not already been specifically devised, and which might remain after the debts and legacies are paid, as all the personalty are charged with their liquidation as stated in the eighth clause of the fourth article. There is, also, the right of sepulture in the testator's lot, in Spring Grove Cemetery, in com non with those specially

designated, and to occupy, as one of the nephews of the deceased, a place in his pew in the Baptist church.

These, however, can not be subjected to execution. Whether this property, indeed, can be taken for his debts must depend upon the further fact—is it exempted or not, by law, from sales? If the title to any portion of the testator's property should have technically passed to Andrew McMicken, he may, nevertheless, accept or reject the devise. He can not be compelled to take the bequest, nor can his creditors charge it until it has properly become his property.

The rule is well settled, that a conveyance made in the lifetime of the grantee by deed, as well as a devise, may be disclaimed by the grantee or devisee; not so with the heir: he is appointed by the law to take, and where the estate falls by descent, he can not renounce the title except by release.

"A devisee," says Chancellor Kent, "is not bound to accept of a devise, *nolens volens*, and he may renounce the gift, by which act the estate will descend to the heir, or pass over in some other direction under the will." 4 Com. 533; 3 B. and Ald. 31; *Doe. dem. Smyth* v. *Smyth*, 6 Barn. and Cres. 112; 1 Story, 499, *Webster* v. *Gilman*.

But it is argued, there must an unequivocal act of disclaimer. Whether it can be effected by parol is doubtful, but a written release will be sufficient and a *fortiori*, any legal proceedings, which necessarily estop a party, as where the devisee, by his answer, disclaims all right to any property or interest, real or personal, that may have been given to him by the testator's will; it must follow, he can not thereafter set up his claim. He is for ever estopped. In conclusion, we regard the policy of the law, which favors testamentary bequests for the benefit of the wives and children of devisees to be eminently just. The principle it vindicates is now the rule of decision in Ohio by positive legislation; and if a husband, not in debt, may create a trust for his family, which, *de facto*, becomes their separate estate, there can be no legal obstacle to the attainment

of the same purpose, through a devise by the relative of the husband in trust for the same object. In such cases no one can complain, for no one can be said to suffer an injury. No creditor is defrauded, and no rule of equity violated.

Bill dismissed.