## LOUIS SANDS v. LILIAS I. DAVIS.

*Ejectment among Tenants in Common—Allowance for Improvements.*

The statute allowing an ejected party pay for his improvements (Act 180 of 1875) does not apply to tenants in common owning undivided interests.

The statute protecting improvements made under tax-titles (Comp. L., §§ 6252-3) did not apply where the entry or holding was not under a tax-title alone. Whether the statute is operative now—Q.

A United States patent is the beginning of every absolute legal title to lands in this country.

United States land is not subject to taxation, or private transfer or ownership, until entry of purchase, which is completed by the patent.

The record of a United States patent in the government office at Washington has the same force as the patent.

The validity or operation of a government patent is not impaired by neglecting to record it in the registry of the county where the land lies.

A purchaser from one who holds only an undivided interest in patented lands, and who enters as a stranger to the rights of his co-tenants of the other undivided interests, is not estopped from setting up against them an adverse claim that originated before his purchase; such as a tax-title that arose from his grantor's default.

One tenant in common can oust another.

Estoppel from purchasing a tax-title lies only against those who ought to have paid the tax or removed the burden.

Where evidence tending to invalidate a tax-deed is admitted and goes to the jury without any ruling upon it, the Supreme Court cannot properly consider the alleged defects.

Error to Manistee. Submitted October 10 and 11, 1878. Decided January 8, 1879.

EJECTMENT. The facts are in the opinion.

*Ramsdell & Benedict* for plaintiff in error. If a tenant in common enters into actual and exclusive possession, taking the rents and profits to his own use and openly asserting exclusive property, his possession is adverse

and an ouster of his co-tenants, *Small v. Clifford*, 38 Me., 213; *Willison v. Watkins*, 3 Pet., 51. Unity of possession is not essential to tenancy in common, *Bogardus v. Trinity Church*, 4 Sandf. Ch., 675. A tenant in common is not estopped from buying an outstanding title for his exclusive benefit (*Van Horne v. Fonda*, 5 Johns. Ch., 406) where he is under no obligation to protect his co-tenant (*Coleman v. Coleman*, 3 Dana, 403; *Reinboth v. Zerbe Run Imp. Co.*, 29 Penn. St., 139) or where he is in possession under color of title in fee and denies a co-tenancy, *Burhans v. Van Zandt*, 7 Barb., 91; *Osterhout v. Shoemaker*, 3 Hill, 513; *Averill v. Wilson*, 4 Barb., 180.

*Dovel & Morris* for defendant in error. A tenant in common cannot set up an adverse tax-title acquired through his own default, as against his co-tenant (*Lacey v. Davis*, 4 Mich., 140; *Paige v. Webster*, 8 Mich., 263; *Butler v. Porter*, 13 Mich., 292; *Dubois v. Campau*, 24 Mich., 360; White and Tudor, Lead. Cas. in Eq., 899; *Horton v. Saunders*, 13 Mich., 409; *Phelan v. Kelley*, 25 Wend., 389; *Jackson v. Spear*, 7 Wend., 401); neither can his grantee, *Jackson v. Bush*, 10 Johns., 222; *Cook v. Travis*, 20 N. Y., 400; *Jackson v. Scott*, 18 Johns., 94; *Arnot v. Beadle*, Lalor's Supp. to Hill & Denio, 181; *Jackson v. Hinman*, 10 Johns., 292; *Jackson v. Parker*, 9 Cow., 73.

CAMPBELL, C. J. Defendant in error in her own right and as assignee of her brother, as heirs at law of Joseph Smith, recovered judgment against Sands for one undivided fifth of certain premises in Manistee county, being lot 1 in section 7, town 21 north of range 16 west, except a parcel held by a third person. Joseph Smith was original purchaser from the United States by patent dated March 10, 1852. He died in 1858 leaving four children, Nancy B. Bagley, Luther G. Smith, V. Adelaide Sherwood, and Augustus E. Smith, and two grandchil-

dren, Lilias I. Ford, now Lilias I. Davis, and George A. E. Ford. George A. E. Ford came of age May 18, 1873, and Mrs. Davis in 1869.

August 13, 1867, Sands took a quit-claim deed from Delos L. Filer of the land in question. There was evidence tending to show that Filer then claimed to own the land, but Sands introduced no testimony to show from what source Filer derived title. Sands went at once into possession, and as the evidence tends to show, did so claiming to be the exclusive owner.

On the 24th of January, 1866, a tax-deed was made to one Wilson Salling for taxes of 1863, as purchaser of the State bid.

On the 9th day of February, 1878, after this suit was commenced, a tax-deed was made to one Nelson Salling of the same lands for taxes of 1864, as purchaser at the sale in October, 1865.

On the 22d of August, 1866, one E. N. Salling made a quit-claim to Robert M. Risdon, who on April 16, 1870, quit-claimed one undivided half to Sands. He had before, on July 1, 1867, quit-claimed the other undivided half to Nathan Engelmann.

On the 5th of May, 1869, Nathan Engelmann, Sarah Engelmann, Michal Engelmann, and Sophia Engelmann quit-claimed to William H. W. Cushman, Isaac N. Hardin and James W. Calkins, who, with their wives, on August 1, 1870, quit-claimed to Sands. It does not appear from the record whether these four Engelmanns were the original Nathan Engelmann and three others, or if not, how they represented him. It seems to have been assumed, however, that they conveyed his interest.

On the 29th of December, 1877, one week before this suit was commenced, a quit-claim deed was made by Wilson ,Salling describing himself as *alias* E. Nelson Salling, stating that it was given to confirm to Sands the title under the tax deed of January 24, 1866, and that the grantor was the original Wilson Salling, to

whom that deed was made. There was evidence tending to show such identity.

No further evidence was put in by defendant except as to making valuable improvements and paying taxes. He claimed that if Mrs. Davis recovered, he was entitled under the statute of 1875 to pay for his improvements.

Upon this point we need not consider the precise effect and operation of that statute (L. 1875, p. 207), as it has already been decided in *Martin v. O'Conner*, 37 Mich., 440, that it has no reference to tenants in common owning undivided interests.

And the previous statute (Comp. L., § 6252–3), protecting improvements under tax-titles, did not (if not entirely inoperative now) apply to cases like the present, where the party in possession did not enter or hold merely under a tax-title. *Gilman v. Riopelle*, 18 Mich., 145; *King v. Harrington*, 18 Mich., 213.

The construction of the statute of 1875, and its applicability *ex post facto*, need not therefore be discussed. It is very possible that on a partition there will be no difficulty in making such an allotment as will entirely protect all parties.

The remaining questions lie within a narrow compass.

Plaintiff below gave in evidence, in addition to the United States patent and her own derivative and inherited title, quit-claim conveyances to Delos L. Filer from three of the four surviving children of Joseph Smith, viz.: from Augustus E. Smith, August 11, 1862; from Violetta Sherwood, August 23, 1866, and from Nancy Bagley, May 20, 1864. Evidence was also given tending to show that Filer went into possession immediately after his purchase from Augustus E. Smith.

This testimony showed that the government title was vested two-fifths in Sands, one-fifth in Luther G. Smith, one-fifth in Delos L. Filer, and one-fifth in Mrs. Davis. The tax-title of 1863 was in Sands and that of 1864 in Salling.

The points presented are *first*, whether Sands was estopped from setting up the tax-titles; and *second*, whether they are valid.

There can be no doubt that under the laws of the United States which invest the government with plenary power over the primary disposition of lands, all parties are bound to look to the United States patent as the first instrument which made an absolute legal title in any one. Smith was the original purchaser, and until his entry of purchase, which was completed by the patent, the land was not open to private transfer or ownership, and was not before such entry taxable. The record of the patent in the proper office in Washington is declared by law to be of the same force as the patent itself. See *McGarrahan v. Mining Co.*, 96 U. S., 316. While our recording laws allow and encourage the record of patents in our county registries, the failure so to record them cannot operate to injuriously affect their validity or operation.

It does not, however, follow from this that a purchaser from one who holds but an undivided interest in the patented lands is estopped from setting up an adverse claim which originated before his purchase, against the remaining co-tenants of the other undivided interests.

There is no authority whatever for holding that one tenant in common may not, if he chooses and if he is actually able to do so, oust another. That has been frequently decided in this court, the latest case being *Campau v. Dubois*, decided at the October term, 1878. The testimony in this case tended to show that Filer claimed to own the land when he deeded it to Sands, and that Sands had entered as claiming the entire title. He took no warranty from Filer, but entered under a quit-claim deed and from the date of his purchase had no further legal relations with him. He never had any legal relations of tenancy or other contract dealings with the other co-tenants of Filer.

Whatever may have been Filer's disability to purchase a tax-title that was the result of his own default, it is

difficult to see how Sands can be made subject to any such disability. When he purchased, the tax-title for 1863 and the tax sale for 1864 were both already in existence as adverse interests, which, if valid at all, would destroy all the other titles, and would make his own purchase from Filer unavailing. Having no further relations with Filer, and no duties to perform towards him, there is no rule of law which would make it illegal or unconscionable to buy in any adverse title which he could find. And as he never derived any title or possession from the remaining tenants, he certainly owed no duties to them. As well remarked by the United States Supreme Court in *Blights' Lessee v. Rochester*, 7 Wheat., 548, "The propriety of applying the doctrines between lessor and lessee, to a vendor and vendee, may well be doubted. The vendee acquires the title for himself, and his faith is not pledged to maintain the title of the vendor. The rights of the vendor are intended to be extinguished by the sale, and he has no continuing interest in the maintenance of his title, unless he should be called upon in consequence of some covenant or warranty in his deed. The property having become by the sale the property of the vendee, he has a right to fortify that title by the purchase of any other which may protect him in the quiet enjoyment of the premises. No principle of morality restrains him from doing this; nor is either the letter or spirit of the contract violated by it."

If Sands had gone into possession by the aid of the other tenants, or in recognition of their rights, he might in that way, perhaps, have incurred some duties towards them. But he went in as a stranger to their claims under a claim which denied their existence or validity. He became liable to an action of ejectment the moment he assumed possession. We see, therefore, no reason why he could not then or thereafter, as well as he could have done it before, purchase a title which was at that time adverse to the holders of the whole original title. See further *Watkins v. Holman*, 16 Pet., 25; *Willison v.*

*Watkins,* 3 Pet., 43; *Society for the Propagation of the Gospel v. Pawlet,* 4 Pet., 480; *Bradstreet v. Huntington,* 5 Pet., 402.

The case of *Osterhout v. Shoemaker,* 3 Hill, 513, is also clear on this point, and in *Sparrow v. Kingman,* 1 Comst., 242, the doctrine is still more forcibly expressed and enforced beyond the rule in the latter case. It was held that inasmuch as a quit-claim deed was not an assertion of any particular title, or of any title at all, it did not of itself operate as an estoppel against either grantor or grantee as to the nature or extent of the title. And if so it could still less be made to protect strangers to it.

The case of *Blackwood v. Van Vleit,* 30 Mich., 118, holds in conformity with these views that there can be no estoppel against purchasing tax-titles except against one who had a duty to pay the tax or remove the burden.

It was competent, therefore, for Sands to rely on the tax-title of 1863 as belonging to himself, and that of 1864 as showing an outstanding title in Salling.

While the court admitted evidence tending to invalidate these deeds, yet when the case went to the jury no ruling was made upon them, and therefore we cannot properly consider those defects. The jury were charged that if Filer was in possession when the taxes were levied Sands could not set up these deeds in defense. This was error for the reasons above referred to.

It follows that the judgment below must be reversed with costs and a new trial granted.

The other Justices concurred.