JACOB A. GAUKLER v. CHARLES G. MORAN.

66  353
109  419

*Will—Construction—Creation of life-estate.*

A testator devised to his daughter certain real estate " during her natural life-time, and after her death to her heirs and assigns, forever ;" to have and to hold the same to her during her natural life, and afterwards to her heirs and assigns, forever.

*Held*, that she took a life-estate in the land, and no other or greater interest.

Appeal from Wayne. (Jennison, J.) Argued May 5, 1887. Decided June 16, 1887.

Bill filed to quiet title. Decree dismissing bill affirmed. The facts are stated in the opinion.

*George W. Radford*, for complainant.

*Moran, Barnard & Moran* (*Atkinson & Atkinson*, of counsel), for defendant.

MORSE, J.   The complainant claims to file his bill in this cause to quiet his title to certain real estate, and to remove a cloud from such title, growing out of a conveyance by a quitclaim deed from the children and heirs of Flavia (Allard) La Forge to defendant.

The point involved is the construction of a clause in the will of Jacques Allard, deceased, father of the aforesaid Flavia.

Allard died in Wayne county, in this State, in 1859, leaving a will, which was admitted to probate February 28, 1859. He bequeathed to his wife the sum of $300 per annum during her life, in lieu of dower, to be paid quarterly, and a horse, harness, and buggy; and further provided:

"It is my wish that she live at the old homestead with her daughters, and that her expenses, of whatsoever nature they may be, are to be paid by my two daughters, Jeneve and Flavia, and also that of her horse, to be maintained at their expense; and if she, my beloved wife, is willing to live with her daughters, then she shall not receive the three hundred dollars as mentioned above, but her living and being maintained by them being in consideration thereof (the three hundred dollars)."

He gave and devised to his daughter Jeneve, "during her natural life-time, and after her death to her heirs and assigns, forever," certain premises, describing them, and "to have and to hold the premises above described to the said Jeneve during her natural life-time, and afterwards to her heirs and assigns, forever."

He gave and bequeathed to his daughter Flavia the premises in question in this suit,—

"During her natural life-time, and after her death to her heirs and assigns, forever; * * * together with all the hereditaments and appurtenances thereunto belonging, or in anywise appertaining; to have and to hold the premises above described to the said Flavia during her natural life, and afterwards to her heirs and assigns, forever."

He also devised 25 acres of land to the four infant heirs of a deceased daughter, Isabella, to be equally divided between them when they arrived at age. Also $50 to each of them; a cow to each of the girls, three in number; and one two-year-old mare colt to the boy;—

" They to receive said $50 either in chattels or money, and also the cows and the mare colt, when they shall be 25 years old, said money or chattels to be paid them by my two daughters out of their shares (Jeneve and Flavia), above-mentioned heirs; to have and to hold the above-described piece of land to them and their assigns, forever."

He bequeathed "all the rest, residue, and remainder" of his real and personal estate to Jeneve, Flavia, and the heirs of Isabella; the four heirs of Isabella "to have one share, or

one-third of the whole, to be equally divided amongst them, share and share alike."

Flavia Allard intermarried with one William G. La Forge, and September 9, 1871, she conveyed, by warranty deed, her husband joining with her, the real estate in controversy to Enos Lebot. In April, 1874, Lebot, by warranty deed, conveyed the same premises to Hugh Campbell, who on the sixteenth day of April, 1875, conveyed the same in fee to the complainant, who has been in possession ever since.

Flavia Allard La Forge is still living, and has three children, Rosa (La Forge) Richards, Anna La Forge, and John La Forge. These children, February 8, 1882, conveyed, by quitclaim deed, all their right, title, and interest in this land to the defendant, Charles G. Moran.

The bill of complaint was dismissed in the court below.

The complainant's counsel insists that it was the clear intention of the testator that his daughter Flavia should have the land in question absolutely and in fee, and the will should so be construed. The defendant's counsel claim that, inasmuch as the complainant asserts in his bill, and relies here upon the allegation, that the defendant received his deed from strangers to the title, there is no cloud upon his title, and his bill to quiet title will not lie, as he seeks to declare void a deed which is shown by his bill to be of no value, because made by grantors not connected with the title. They also contend that Flavia, under the will, took only a life-estate in the land. No title in fee ever passed to complainant. He holds simply an estate during the life of Flavia, which holding defendant has not disputed, and does not intend to disturb.

We do not consider it necessary to discuss the first point raised by defendant's counsel. It is very plain to us that Flavia had only a life-estate in these particular premises, and that the testator intended to grant her no larger or other interest therein. The terms of the devise are plain enough;

and, not satisfied with once confining it to her natural life, he closes the *habendum* clause with the same restriction. The 25 acres willed to the four heirs of Isabella are to be held "to them and their assigns, forever," plainly evidencing by his language that he devises it to them in fee. And the last clause of the will, in disposing of the residue of his estate, both real and personal, to the two daughters and the heirs of Isabella, contains no reference to either their heirs or assigns.

It is urged by the solicitor for the complainant that the testator was a Frenchman, ignorant of the full meaning of the English language, and that the scrivener who drafted the will was also evidently an unlearned man, as far as legal terms and phrases are concerned; that the use of the word "assigns" imports that he meant to invest Flavia with the fee of the lands; and that the clause, "during her natural life, and afterwards to her *heirs and assigns* forever," cannot be made consistent without rejecting the word "heirs," so that the latter part of such clause will read, "and afterwards to her *assigns*, forever;" that the two words "heirs" and "assigns" are repugnant to each other, and that one must control the other; and that the word "assigns" would not have been used if it had been intended to grant a life-estate only to Flavia.

We find no evidence in the record that the man who drew the will was not competent to express in fitting terms the full intent of the testator, and the instrument itself is clear enough in every particular.

It is also argued that the burdens imposed upon the two daughters, Jeneve and Flavia, evidence the intention of the testator to grant to each of them the fee to the pieces of land willed to them respectively. They are bound to pay $200 to the heirs of Isabella, and to support their mother. But it is to be remembered that all the residue of the property after the specific bequests are named is devised to the two daugh-

ters and the heirs of Isabella. It does not appear from the record what the relative value of the land devised to Jeneve and Flavia was, as compared to the 25 acres bequeathed to the minor children of Isabella. From aught that we know, the life-interest in their lands might have been worth much more than the fee of the 25 acres. Nor are we informed of the amount of the residue of the property not specifically devised. It is shown, however, that the testator was free from debt at his death. We cannot infer that the burden imposed upon Flavia was greater than she ought to bear under the terms of the will, interpreted as it clearly reads, giving to its language the common and ordinary meaning of the words used. It cannot be considered that such burden enlarged her interest. The intent of the testator would admit of no doubt whatever had the clause read, "during her natural life, and afterwards to her heirs and [their] assigns forever." That such is the meaning of the clause, as it now stands, is evident to us.

The decree of the circuit court for the county of Wayne, in chancery, is affirmed, with costs of both courts.

The other Justices concurred.