3 LRA 688n

## DEFREESE *v.* LAKE.

1. WILLS—CONSTRUCTION OF DEVISE—ESTATE FOR LIFE.
   Under a will devising lands to the testator's wife, after her decease to his son, and, after the son's decease, to his heirs, the son takes only an estate for life, with remainder to his heirs.

2. SAME—EVIDENCE.
   In an action involving the construction of a will, the scrivener who drew the same cannot, in the absence of ambiguity upon the face of the instrument, testify to conversations had with the testator, at the time the will was drawn and executed, as to the interest intended to be devised.

3. TENANT FOR LIFE—TAX TITLE—RENUNCIATION OF DEVISE.
   The rule that a life tenant in possession, to whom taxes are assessed, cannot cut off the remainder-man and acquire the title in fee by allowing the premises to be sold for taxes, does not extend to a devisee of a life estate who has renounced the devise.

4. DEVISE—PRESUMPTION AS TO ACCEPTANCE—HOW OVERCOME.
   An acceptance of a devise of a life estate, in remainder will be presumed, but such presumption may be overcome by evidence of acts inconsistent with acceptance.

5. RENUNCIATION OF DEVISE—EVIDENCE—QUESTION FOR JURY.
   Evidence that a devisee of a life estate in remainder claimed title in fee to the premises devised by virtue of tax deeds for taxes assessed against the land during the occupancy

| | |
|---|---|
| 109 | 415 |
| 109 | 622 |
| 109 | 415 |
| 112 | 480 |
| 109 | 415 |
| 119 | 220 |
| 109 | 415 |
| 121 | 323 |
| 109 | 415 |
| d123 | 460 |
| 109 | 415 |
| 125 | 589 |
| 109 | 415 |
| s67NW | 505 |
| s63ASR | 584 |
| 129 | 349 |
| 109 | 415 |
| f141 | ²111 |
| 109 | 415 |
| 145 | 301 |
| 109 | 415 |
| f148 | ³292 |

of the first devisee, that he had such deeds recorded, that he took possession of the premises after the death of the first tenant, and that he occupied the same for two years, and then conveyed by warranty deed, is sufficient to go to the jury upon the question of his renunciation of the devise.

6. SAME.

Testimony of a third party, from whom the devisee acquired his tax titles, to the effect that he saw the land advertised in the paper, and bid it in, is admissible, as tending to show that the sale was not the result of collusion between the devisees of the life estates.

7. TAX TITLE—PURCHASE BY LIFE TENANT—RIGHTS OF REMAIN-DER-MEN.

The devisee of a life estate in remainder cannot, if he accepts such devise, obtain title in fee to the land by purchase at a tax sale for taxes assessed during the incumbency of his predecessor in title, and such purchase, at most, only entitles him to reimbursement from the latter or to contribu-tion from the remainder-men, to whose benefit the purchase inures.

8. CONVEYANCES—EXPECTANT ESTATES.

A remainder-man may, before the death of the life tenant, convey his interest, under 2 How. Stat. § 5551, declaring expectant estates to be descendible, devisable, and alienable in the same manner as estates in possession.

9. WILLS—SUSPENSION OF ALIENATION.

A devise to testator's wife for life, after her death to a son for life, and after his death to his heirs, suspends the power of alienation for only two lives in being at the creation of the estate, and is, therefore, not in contravention of 2 How. Stat. § 5531.

10. APPEAL—STIPULATION.

An objection that the probate court had no jurisdiction to admit a will to probate cannot be considered upon appeal, where the parties have stipulated that the will was "duly probated."

Error to Shiawassee; Wisner, J., presiding. Submitted January 8, 1896. Decided May 26, 1896.

Ejectment by Aaron Defreese against John A. Lake and wife. From a judgment for plaintiff on verdict directed by the court, defendants bring error. Reversed.

*Watson & Chapman*, for appellants.

*John T. McCurdy*, for appellee.

HOOKER, J. One Peter Casler, being owner in fee of the premises in controversy, made a will which contained the following provisions:

"I give and bequeath to my wife, Betsey Casler, all the west half of the southeast quarter, and the south half of the east half of the southeast quarter, except so much of said land on the south as will make forty acres, on section thirty-one, according to the original survey of the United States, being in the township of Shiawassee, county of Shiawassee, and State of Michigan, it being the same farm on which I now reside. After her decease the said real estate above described I give and bequeath to Henry Casler, my son, and after his decease said real estate is to belong to his heirs."

It appears that, during the time that Betsey Casler occupied the land, it was assessed for taxes to her for the years 1874 and 1875. It was sold for these taxes, and tax deeds were executed to Henry Casler on December 9, 1876, and December 13, 1877. After the testator's death, his widow, Betsey Casler, entered and occupied the premises until her death, which occurred in September, 1877. Afterwards Henry Casler entered and held possession until November 7, 1879, when he conveyed the premises to John A. Lake by warranty deed. Mary Lake is the wife of John Lake, and, at the time this action of ejectment was brought against them, resided with him upon the premises. Henry Casler died September 15, 1886, leaving issue. The plaintiff claims title to the land in question under quitclaim deeds obtained from the descendants of Henry Casler, executed and delivered before his death; also, a quitclaim deed purporting to have been given by other persons, styling themselves "heirs at law of Peter Casler, deceased," dated after Henry's death. Some of them were admitted to be heirs

109 MICH.—27.

at law of Henry Casler. Thus we find the plaintiff claiming title, and a right to recover the premises, by virtue of a deed from Henry Casler's heirs, while the defendants are in possession, claiming under a deed from Henry Casler himself. The plaintiff contends:

1. That Henry Casler took only a life estate, with remainder to his heirs.

2. That the purchase of the lands at tax sale inured to the benefit of the remainder-men, and title, as against them, cannot be claimed under such deeds.

On the other hand, the defendants say that Henry Casler took title in fee simple, under the will, and that, failing in that, his tax deeds gave him such title.

The will has been quoted. It conveyed a life estate to Betsey Casler, with remainder to her son Henry. So far there can be no dispute. Was this a remainder in fee simple? Obviously, this must depend upon the construction to be given to the words, "I give and bequeath to Henry Casler, my son, and after his decease said real estate is to belong to his heirs." Does this language evince an intention upon the part of the testator to limit Henry's interest to an estate for life? If the intention had been to devise an estate in fee simple, the most apt and proper words would have been, "I give and devise to Henry Casler, my son, his heirs and assigns forever." An equally effective and perhaps common method of expression would be, "I give and devise to Henry Casler, my son," the law in such case supplying the necessary words to create the estate in fee simple. But this testator used neither expression, but added to the devise to Henry the provision that after his decease "said real estate should belong to his heirs,"—words which necessarily imply that Henry Casler was to have only a life estate, if they are not to be treated as superfluous.

We are not without precedents in this State which warrant the conclusion that this devised a life estate.

*Fraser* v. *Chene*, 2 Mich. 81, construed a will in which the following language was used:

"I give and bequeath to my beloved son Gabriel Chene, my eldest, the farm I now reside on, for and during his lifetime, with all the appurtenances thereon; and after he, my said son, the said Gabriel Chene, is deceased, then the right, title, and appurtenances of the aforesaid farm is to become the property of said Gabriel Chene's male heirs."

The court said.

"It would seem to any one reading the will in this case that the intention of the testator to give a life estate only to his son Gabriel was so very plain that it could not be doubted."

In the case of *Gaukler* v. *Moran*, 66 Mich. 354, the testator devised premises to a daughter "during her natural lifetime, and after her death to her heirs and assigns." This was held to give the daughter a life estate merely. See, also, *Cousino* v. *Cousino*, 86 Mich. 323; *Jones* v. *Deming*, 91 Mich. 481.

We are of the opinion that the words used indicated a plain intention to give to Henry Casler a life estate only. This being so, the statute (2 How. Stat. § 5544) applies, and the heirs of Henry Casler take as purchasers. This may seem at variance with the case of *Fraser* v. *Chene*, *supra*, but it is not, as the will in that case antedated the statute.

One Hartwell testified on behalf of the defendants that he drew the will, and that he had a conversation with the testator, at the time the will was drawn and executed, in regard to the provision hereinbefore mentioned, and that he understood the testator to wish Henry to have the land "in his own name, free;" that the witness "was in doubt, some, how to word the will, as it was new business to him;" and that "he asked the testator particularly what he wished,—how he wished the estate disposed of after his death,—whether Henry was to be allowed to use it all, or keep it in trust," and he said:

"It is no matter. Henry will not have anything left, anyway. It is all for Henry."

"Q. Did you understand you were creating a fee simple?
"A. Yes, sir.
"Q. By the use of those words?
"A. Yes, sir."

This testimony was afterwards stricken out, on motion of plaintiff's counsel, upon which error is assigned. There was no ambiguity on the face of the instrument, and the testimony was not admissible. *Fraser* v. *Chene, supra; Kinney* v. *Kinney*, 34 Mich. 250; *Waldron* v. *Waldron*, 45 Mich. 354; *Forbes* v. *Darling*, 94 Mich. 625.

It being settled that Henry Casler's title to the premises, acquired through the will, terminated at his death, we will next consider the question of the tax titles. It will be remembered that he procured a tax deed of the premises before the termination of Betsey Casler's estate. These taxes were properly assessed to Betsey Casler, who owed the duty of payment, both to the State and to the remainder-men. *Jenks* v. *Horton*, 96 Mich. 13; *Smith* v. *Blindbury*, 66 Mich. 319. But Henry Casler was in a different situation. He certainly owed no duty of payment to the State, though his interest in the premises was liable to sale therefor. It is a general proposition that a life tenant to whom taxes are assessed, and upon whom the law imposes the burden of such taxes, cannot acquire the title in fee by allowing the premises to be sold for taxes, and bidding them in, thus cutting off the remainder-man. But in this case Henry Casler was not a life tenant in possession, *and, so far as the record shows,* he had not done anything tending to show whether or not he had accepted the devise prior to the time he obtained his tax deeds, which manifestly he was under no obligation to do unless he chose. 2 Redf. Wills, 304, and cases cited; *Doe* v. *Smyth*, 6 Barn. &

C. 116; 4 Kent, Comm. 534; *Townson* v. *Tickell*, 3 Barn. & Ald. 31; 2 Story, Eq. Jur. §§ 1075–1079.

In 3 Washb. Real Prop. 6 (*402), the author says:

"An heir at law is the only person who, by the common law, becomes the owner of land without his own agency or assent. A title by deed or devise requires the assent of the grantee or devisee before it can take effect."

Again, at page 579 (*700), the author says:

"It is hardly necessary to add that no one can make another the owner of an estate against his consent, by devising it to him; so that, if the devisee disclaim the devise, it becomes inoperative and goes to the heir."

. It is said that a parol disclaimer will not prevent the devisee from *subsequently claiming* the devise, and that the reason of the necessity of a deed grows out of the presumptive vesting of the devised interest in the devisee before entry. See *Perry* v. *Hale*, 44 N. H. 365. It is, in our opinion, illogical to say that a deed is necessary because of the presumption that the title has vested, when the title does not vest by a devise unless there is an acceptance. It would seem that the deed would be necessary only where the title had actually vested, which appears to depend upon acceptance. If it be admitted that the law will presume an acceptance, it is not a conclusive presumption, and, when it is shown to have been renounced, it is shown that the title did not vest, and apparently there would be no occasion for divesting a title that had not vested. There are two classes of cases in which it may become necessary to determine what constitutes a renunciation or acceptance: (1) Cases where the devisee or his privies are denying renunciation; and (2) where they are asserting it. In the former (*i. e.*, before the devisee can be deprived of the estate) there are cases that hold that renunciation is not to be lightly inferred, and that equivocal acts will not do, and it has been contended that a deed is necessary when the devise is of an absolute and uncon-

ditional fee. On the other hand, if the devisee or his privies are asserting renunciation, or, what is equivalent, denying acceptance, it has been said that "the presumption of assent is never conclusive; neither are acts that indicate a design or intention to accept." *Wheeler* v. *Lester*, 1 Bradf. Sur. 293; *Perry* v. *Hale, supra.* But an entry and occupation *under the will* have been considered the most satisfactory evidence of acceptance, in cases where action has been brought against the devisee, where the devise was subject to the payment of debts. *Pickering* v. *Pickering*, 6 N. H. 120; *Glen* v. *Fisher*, 6 Johns. Ch. 33 (10 Am. Dec. 310); *Kelsey* v. *Western*, 2 N. Y. 500. In this case the devisee is dead, and his grantee sets up the claim that he entered and occupied the premises under another title; *i. e.*, a tax title acquired after the devise, but before the end of the preceding estate. There is no other evidence bearing upon the question of acceptance or renunciation, except the fact that he claimed title in fee, contrary to the terms of the devise, and we are asked to determine whether this was sufficient evidence of renunciation to go to the jury.

In *Doe* v. *Smyth*, 6 Barn. & C. 112, the court said that a devisee cannot be compelled to accept the devised interest, but may by some mode renounce and disclaim it.

"* * * And it is not necessary in the present case to decide whether such renunciation and disclaimer may be by parol, because, in whatever form they are made, we think they must be a clear and unequivocal disclaimer of any estate in the land. In this case the disclaimer is not of any estate in the land, but only of benefit under the will, accompanied in every instance with an assertion of a right to the land by a higher and better title. This proceeded on a mistake of which the devisee (the lessor of the plaintiff), though slowly and reluctantly, was at last convinced. No case similar to this was cited, or has been found, and we therefore think the lessor of the plaintiff is not precluded from acting under her improved judgment, *and taking the land as devisee under the will.*"

Here the devisee was denying renunciation, and her contention was sustained. Whatever we may think of the holding that a disclaimer of a devise is not good unless it goes to the extent of disclaiming any interest in the land, although such claim may be based upon other and better title, it must be conceded that the case turned upon that, or that, at all events, it did not decide that a disclaimer must be by deed. This case was decided in 1826.

The case of *Bryan* v. *Hyre,* 1 Rob. (Va.) 102 (39 Am. Dec. 246), decided in 1842, affirmed a case where the trial judge had instructed the jury that a disclaimer of a devise must be in writing. This is based upon the rule laid down in Coke upon Littleton,—that, *where a devisee enters,* the freehold is in him before he enters, and in that case the heir takes nothing. Co. Litt. 111*a.* The case of *Townson* v. *Tickell* was cited, but it does not decide the point, for there the disclaimer *was* in writing. The decision really rests upon *Doe* v. *Smyth,* 6 Barn. & C. 112, which, as has been shown, did not pass upon the question. Indeed, that case (*i. e., Doe* v. *Smyth*) seems to have overlooked the earlier case of *Townson* v. *Tickell,* 3 Barn. & Ald. 31, decided in 1819. The Virginia case mentions it to disapprove the opinion of Holroyd, J., where he says:

"I think that an estate cannot be forced on a man. A devise, however, being *prima facie* for the devisee's benefit, he is supposed to assent to it, until he does some act to show his dissent. The law presumes that he will assent, until the contrary be proved. When the contrary, however, is proved, it shows that he never did assent to the devise, and consequently that the estate never was in him. I cannot think that it is necessary for a party to go through the form of disclaiming in a court of record, nor that he should be at the trouble or expense of executing a deed to show that he did not assent to the devise. Unless some strong authority were shown to that effect, I cannot think that the law requires either of these forms. I am confirmed in that opinion by the case of *Bonifaut* v. *Greenfield,* Cro. Eliz. 80."

In that case the renunciation was by deed, and it was claimed that was insufficient, and that a disclaimer in a court of record was necessary. All of the judges agreed that the disclaimer by deed was good, and the *dictum* contained in the opinion of Holroyd, J., was apparently approved by the other justices. So far, then, we have *dictum* against *dictum*, in the English cases, with the Virginia case holding a writing necessary.

The question was up in Massachusetts in the same year that *Doe* v. *Smyth* was decided (*i. e.*, 1826). *Stebbins* v. *Lathrop*, 4 Pick. 43. It was there held that nothing short of an express renunciation could be taken notice of by a court of probate. The court said:

"Nothing appears amounting to a renunciation. But, if this were doubtful, the question is not to be settled in the court of probate. The respondent has a right to be heard on this point in a court of law, and he cannot be so heard if the grant of probate should be revoked. The most that appears at present is an intention to renounce, and even this is not very clear. It is possible that the intention was merely to impede the creditors in the collection of their debts. Until the legatees shall actually renounce their legacies, their assent to the provisions of the will, which are apparently beneficial to them, will be presumed. *Townson* v. *Tickell*, 3 Barn. & Ald. 31. If they should persist in the intention to renounce the estate, the probate of the will will not restrain them. And then the question will be fairly raised whether this can be done to the prejudice of creditors. This being the light in which we view this point, it will not be necessary to determine whether the acts of the devisees will in law amount to a renunciation. It is sufficient to justify the proceedings of the judge of probate in this particular that these acts, taken together,—especially the acts of Miner Stebbins,— are equivocal, and that nothing short of an express renunciation can be taken notice of in a court of probate. And there seems no good reason why the fact should not be verified by the record, when the parties are present, and may renounce if they are so inclined. No doubt a devisee may disclaim by deed the estate devised, as was decided in the case of *Townson* v. *Tickell*, 3 Barn. & Ald. 31; and *perhaps he may disclaim without being subjected to*

*the expense and trouble of executing a deed,* as Holroyd,
J., seemed to think. But it does not follow that a court
of probate shall receive evidence of such disclaimer, and
most certainly not when the evidence relates to acts of a
doubtful bearing. In the case of *Proctor* v. *Atkyns,* 1
Mass. 321, it was decided that a court of probate could
not determine upon a claim set up by deed, because it
was determinable exclusively at the common law. The
same reason applies with force to the supposed disclaimer
in this case."

In *Webster* v. *Gilman,* 1 Story, 499, the following
appears:

"It may be even doubtful whether, under our laws,
any renunciation or disclaimer not by deed or matter
of record would be an extinguishment of the right of the
devisee. But at all events it should be evidenced by
some solemn act or acknowledgment in writing, or by
some open and positive act of renunciation or disclaimer
which will prevent all future cavil, and operate, in point
of evidence, as a *quasi* estoppel."

Here, again, the question was not decided.

The question was before the United States circuit court
again in *Ex parte Fuller,* 2 Story, 330, and again it
was not passed upon. The court said:

"As to the other point, *there is no doubt that the
devisee must consent, otherwise the title does not vest
in him.* But where the estate is devised absolutely, and
without any trust or incumbrances, the law will presume
it to be accepted by the devisee, because it is for his
benefit; and some solemn, notorious act is required to
establish his renunciation or disclaimer of it. Until that
is done, *stabit presumptio pro veritate.* That is suffi-
ciently shown by the case of *Townson* v. *Tickell,* 3 Barn.
& Ald. 31, cited at the bar, and the still later case of
*Doe* v. *Smyth,* 6 Barn. & C. 112. *Brown* v. *Wood,* 17
Mass. 68, and *Ward* v. *Fuller,* 15 Pick. 185, manifestly
proceeded upon the same foundation. Now, in the
present case, there is no pretense to say that Ross has
ever renounced or disclaimed the estate devised to him.
The statement of fact is that he has done no act accept-
ing or declining the devise. If so, then the presumption

of law is that he has, by implication, accepted it, since it gives him an unconditional fee."

The case of *Ward* v. *Fuller*, 15 Pick. 185, went no further than to hold that a devisee before entry had a sufficient seisin to maintain a writ of right.

In 4 Kent, Comm. p. 533, it is said that—

"An estate vests, under a devise, on the death of the testator, before entry. But a devisee is not bound to accept of a devise to him *nolens volens*, and he may renounce the gift, by which act the estate will descend to the heir, or pass in some other direction under the will. The disclaimer and renunciation must be by some unequivocal act, and it is left undecided whether a verbal disclaimer will be sufficient. A disclaimer by deed is sufficient; and some judges have held that it may be by a verbal renunciation. Perhaps the case will be governed by circumstances."

See, also, *Perry* v. *Hale*, 44 N. H. 364.

From the foregoing, we conclude that an acceptance should be presumed in this case, which presumption may be overthrown by acts inconsistent with acceptance. The only evidence here is the purchase of tax titles, and procuring and recording tax deeds of the premises, and the conveyance, by full warranty deed, within two years after Betsey Casler's death, of the premises devised. The inference is strong that Henry Casler's design in obtaining the deeds was to acquire a better title than that conveyed by the will, either because of some inherent defect in the latter, or from a desire to obtain the fee. There is perhaps room for the suspicion that his mother, Betsey Casler, permitted this, as the plaintiff's counsel contends, or that Henry accomplished it without her knowledge, but in either case it tended to show a desire to obtain a better title than he then had. It does not necessarily follow that he was willing to disclaim a valid life estate for his chances under a tax title which, if invalid, might compel him to share his life estate with his brothers and sisters. Again, the testimony of the witness Beard that

he found the land advertised in the paper, and bid it in, tends to show that the sale was not the result of collusion or fraud, and that Henry Casler obtained the tax title from Beard to protect his mother as well as himself. This testimony should not have been stricken out upon plaintiff's motion.   If the son, Henry Casler, never accepted the devise, it is an end of the case upon this record, entitling the defendants to a verdict, inasmuch as the tax deeds are *prima facie* valid, and conveyed the fee.

But, if Henry Casler accepted the devise, it becomes necessary to inquire whether he can set up his tax deeds against the remainder-men.   This is said to depend upon the question whether he owed a duty to them to pay the taxes, or preserve the estate for them, analogous to the duty which his mother owed to him and them.   We have found no case upon all fours with this, and we doubt if it can be said that the law imposes any such duty upon the second life tenant, during the tenancy of his predecessor.   But we think it does not necessarily turn upon a duty to pay.   While he was under no obligation to preserve the estate, if he chose to do so that he might reap the benefit of the devise, he should be content to look to the occupant, whose duty it was to pay them, for reimbursement, or, if not, he could expect no more than contribution from the other remainder-men, to whose benefit, as well as · his own, such payment inured.   It would be inequitable to permit him to claim title under such circumstances, where he took under the same will that gave them an estate, thereby recognizing their right. Good faith towards the testator should forbid such an attempt to defeat his purpose.   Were this claim to be sustained, it would make it easy for two life tenants, by collusion, to defeat the remainder-men, under circumstances like these.   It may be said that this could be done by the mere disclaimer, but this is a mistake.   See 2 How. Stat. § 5548.

We are cited to *Blackwood* v. *Van Vleit*, 30 Mich.
118, and *Sands* v. *Davis*, 40 Mich. 14, to sustain the
claim that Henry Casler was under no disability as a
claimant of the fee under the tax deeds.   The former was
a case where one who went into possession before the tax
levy was held not to be precluded from making and relying
upon a purchase of land at tax sale.   In *Sands* v. *Davis*
the question arose between tenants in common.   In that
case one bought a tax title that was outstanding at the
time of the purchase of his interest in the premises, and
therefore which he owed no duty, to the State or his co-
tenants, to pay, and it was held that he might set up such
title against his cotenants.   Both of these cases recognize
the proposition that one asserting a tax title may be under
a disability, owing to his relations to others claiming in-
terests in the land.   In *Blackwood* v. *Van Vleit* it is
said:

"It was not claimed in this case, so far as the record
shows, that there were contract or *other* relations be-
tween Blackwood and Van Vleit that would preclude the
latter  from  buying  the  former's  land  for  delinquent
taxes."

In *Sands* v. *Davis*, Campbell, C. J., uses the fol-
lowing language:

"If Sands had gone into possession by the aid of the
other tenants, or in recognition of their rights, he might
in that way, perhaps, have incurred some duties towards
them.    But he went in as a stranger to their claims, under
a claim which denied their existence or validity.    He
became liable to an action of ejectment the moment he
assumed possession.    We see, therefore, no reason why
he could not then or thereafter, as well as he could have
done it before, purchase a title which was at that time
adverse to the holders of the whole original title.    The
case of *Blackwood* v. *Van Vleit*, 30 Mich. 118, holds,
in conformity with these views, that there can be no
estoppel against purchasing tax titles, except against
one who had a duty to pay the tax or remove the burden."

There is abundant authority that a tenant in common, whose duty it is to pay a portion of the taxes, cannot acquire a title, as against his cotenant, by purchase at a tax sale for the entire tax. *Dubois* v. *Campau,* 24 Mich. 360, and notes.

1 Wood, Landl. & Ten. § 54, says:

"In the absence of any reservation of rent, or other provision in the lease or conveyance providing therefor, a tenant for life, as between himself and the reversioner, is bound to pay the taxes assessed upon the premises; and if he fails to do so, and they are sold therefor, and the tenant becomes the purchaser, he cannot claim a title in fee against the reversioner."

See, also, *Cairns* v. *Chabert,* 3 Edw. Ch. 312; *Smith* v. *Blindbury,* 66 Mich. 323; *Patrick* v. *Sherwood,* 4 Blatchf. 112; *McMillan* v. *Robbins,* 5 Ohio, 28; *Pike* v. *Wassell,* 94 U. S. 711; *Sidenberg* v. *Ely,* 90 N. Y. 257 (43 Am. Rep. 163); *Varney* v. *Stevens,* 22 Me. 331; *Prettyman* v. *Walston,* 34 Ill. 175; *Hitner* v. *Ege,* 23 Pa. St. 305.

Some of these cases hold that where the life tenant is *compelled* to make permanent betterments, or to pay off incumbrances to prevent a forfeiture, he may enforce contribution against the remainder-man, to the extent of his interest in the land. *Cairns* v. *Chabert,* 3 Edw. Ch. 312; *Foster* v. *Hilliard,* 1 Story, 77; *Daviess* v. *Myers,* 13 B. Mon. 512; *Bell* v. *Mayor, etc., of New York,* 10 Paige, 49; *Eastabrook* v. *Hapgood,* 10 Mass. 313; *Atkins* v. *Kron,* 8 Ired. Eq. 1. Thus it appears that, while the life tenant in possession may be under no legal obligation to pay an incumbrance, and therefore owes no duty to the remainder-man, if, to prevent a forfeiture of his estate, he does pay it, he has a claim against the interest of the remainder-man. Either party may buy in the incumbrance, but cannot hold it to the exclusion of the other, who is willing to contribute his share of the amount paid for the purchase. See cases cited, and *Connecticut Mut. Life Ins. Co.* v. *Bulte,* 45 Mich.

122; *Whitney* v. *Salter*, 36 Minn. 103 (1 Am. St. Rep. 656). In this case it was not clear that any portion of the incumbrance was chargeable to the life tenant, yet it was said that he should be regarded as having made the purchase for the joint benefit of himself and the reversioner or remainder-man,—citing 1 Washb. Real Prop. 96; Biss. Est. 248 (42 Law Lib. 139); See, also, Cooley, Tax'n (2d Ed.), 500–509. We see no reason why this doctrine should not apply equally to the devisee of a life estate not in possession, and can see *no difference in principle*. And we think the rule as applicable to taxes as to any other incumbrance. Therefore we think the right to assert these deeds against the remainder-men hinges on the acceptance or renunciation by Henry Casler of the devise.

Counsel for defendants attack plaintiff's title, claiming that the quitclaim deeds given by the heirs of Henry Casler before his death conveyed no interest, for the reason that there "are no heirs to the living." But the statute is a sufficient answer. The remainder was a future estate, which the statute (2 How. Stat. § 5551) declares to be descendible, devisable, and alienable in the same manner as estates in possession.

Counsel also contend that the devise is void under 2 How. Stat. § 5531, which reads as follows:

"The absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of two lives in being at the creation of the estate, except in the single case mentioned in the next section."

We think that statute has no application, for the power of alienation was suspended for the period of two lives in being only, viz., Betsey Casler and Henry Casler. See, also, section 5535.

Plaintiff's title is also attacked upon the ground of want of jurisdiction in the probate court to admit the will to probate, but we think this question is foreclosed by the stipulation that said will was duly probated, etc.

There is a further question in the case which is dis-

cussed by counsel for the defendants. There is nothing to show that the will was ever recorded, while the tax deeds were promptly placed upon record. The latter fact has significance upon the subject of renunciation, because, if Henry Casler was claiming under the will, there was no occasion for his recording such deeds. Again, the defendants are not shown to have had any actual or constructive notice of the will, or the rights of any of the parties under it. He was therefore apparently a *bona fide* purchaser, relying upon the record of the tax deeds, which was the only title appearing of record in Henry Casler.

As foreshadowed, our conclusion is that it was a question for the jury to determine whether Henry Casler accepted or renounced the devise, and that it was error to direct a verdict for the plaintiff.

The judgment will be reversed, and a new trial ordered.

LONG, C. J., GRANT and MOORE, JJ., concurred. MONTGOMERY, J., concurred in the result.