**RIGGS v. McMULLEN et al.**
**No. 5822.**

Court of Appeals of the District of Columbia.
Nov. 27, 1933.

Rehearing Denied Dec. 26, 1933.

Carberry O'Shea and Elsworth C. Alvord, both of Washington, D. C., and S. P. Simpson, of Cambridge, Mass.., for appellant.

Bènjamin S. Minor, H. Prescott Gatley, Arthur P. Drury, Paul E. Lesh, and Harry K. Hickey, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal from an order of the probate term of the Supreme Court of the District of Columbia overruling an exception to, and approving the first and final account of, the National Savings & Trust Company and Alfred Riggs, as executors of the estate of Jane A. Riggs, deceased.

Miss Riggs died in Washington on June 11, 1930, leaving a large estate and a will thereafter duly probated, the fifth item of which is here in question and provides that:

"I give and bequeath all of my jewelry, the balance of my silver, my clothes, articles of personal adornment, and the rest of my household furniture and effects contained in my present home, 1617 I Street Northwest, Washington, D. C., of every character and description, absolutely, unto Mary F. McMullen, my wishes with respect to which are fully understood by her.

"The library and one third of the family silver contained in my said home belong to my said nephews, Thomas Lawrason Riggs and Elisha Francis Riggs, and if in my possession at the time of my death are, of course, to be disposed of as may be directed by them."

The testatrix by item IX of her will created a substantial trust fund and directed that $1,500 of the annual income thereof should be paid to Miss McMullen during her life. A few days after Miss Riggs' death, her will having been read but not filed, the individual executor and the assistant trust officer of the corporate executor, both being lawyers, called on Miss McMullen at the Riggs' residence where she had long lived as a friend and paid companion of the testatrix.

There one of the gentlemen suggested that complications might arise and Miss Riggs' purpose might be defeated if Miss McMullen should die before final distribution and the property carried by item V should be claimed by Miss McMullen's next of kin.

On the following day Miss McMullen wrote and delivered to the trust company the following letter:

"1617 I Street NW., Washington, D. C.

"I, Mary Floyd McMullen on the 19th day of June 1930 do hereby declare that I relinquish any claim to the estate of the late Jane A. Riggs other than the annuity mentioned in article IX.

"The implied bequest in item V, I consider solely in the light of a trusteeship to carry out the wishes of the deceased as per memorandum.

"Mary Floyd McMullen.
"Witness: Josephine O'Donnell."

And at or about the same time Miss Mc-Mullen delivered to the trust company a letter dated June 4, 1922, addressed by Miss Riggs to her sister Alice, then living, but since deceased, containing directions for the distribution of much, but not all, of the property carried by item V, which is appraised in this proceeding at $25,000.

This letter from Miss Riggs to her sister was written before the present will was made, apparently in connection with an earlier will, but it relates to the same chattels dealt with by item V of the present will.

The executors appear to have attached little or no importance to Miss McMullen's letter of so-called renunciation, for on the day following its receipt one of them notified her that her letter had no legal effect, and when the time came to state their account the executors showed distribution of this property to Miss McMullen. To this account Colonel Riggs, a nephew of the testatrix, filed sundry exceptions, only one of which was pressed and decided; but from the order overruling his exception and approving the account the present appeal was taken. The appellant contends that Miss McMullen's letter of June 19 was an irrevocable renunciation by her of the bequest contained in item V, and that consequently she cannot receive the property carried thereby for any purpose.

While Miss McMullen contends that her letter was no renunciation; that it was neither intended as such by her, nor accepted as such by the executors; and that it was written under a misapprehension of her rights.

The question thus presented requires consideration not only of the text of Miss McMullen's letter, but its history, its surrounding circumstances, and subsequent events.

It is clear from the testimony that Miss McMullen was a highly valued and greatly trusted member of Miss Riggs' household; that she had been there 25 years; that she took benefits and responsibilities under an earlier disposition of Miss Riggs' property; while by the present will, and aside from the present item, she took a life annuity of equal amount from the same trust fund, and under the same conditions, as Miss Riggs' nieces.

When the executors first called upon Miss McMullen at the Riggs' residence, she was much disturbed by their suggestions that complications would result between the executors and her relatives in the event of her death before final distribution; that she was unaccustomed to business and legal proceedings; that both gentlemen were lawyers but did not advise her as to her legal rights in the matter; that her letter was written and delivered by her the following morning; while on the next day the trust officer of the corporate executor sent for her, asked why she had written such a letter, and told her that it had no legal effect.

Miss McMullen testified that when her letter was written she did not know that she had any legal right to the property in question, and did not realize that until it was later suggested that she leave it by will to the executors or to a member of the Riggs' family, but when she subsequently consulted counsel she was advised that she had personal rights in the property concerned.

That her intention at all times has been to do what is absolutely right in the matter and what Miss Riggs desired to have done, concerning which Miss Riggs had given her verbal instructions.

Thereafter the exceptant notified Miss McMullen that the executors had informed him that they would shortly state their account and intended to deliver the chattels covered by item V to her, to which he would make no objection.

On September 9, 1931, the exceptant wrote Miss McMullen that he desired her and her attorney to understand that he did not propose to question the executors' transfer to her of the chattels involved in item V; on October 2 the executors' account was so filed; on October 26 exceptions thereto were filed by Colonel Riggs; on April 26, 1932, the answer of Miss McMullen to the exceptions was filed; while on June 29, 1932, the probate court overruled the exceptions and approved the executors' account.

On the trial the exceptant stated that he changed his attitude toward the account because when he announced his intention of making no objection thereto he understood that it was Miss McMullen's intention to make a distribution of the chattels among the members of the Riggs family; but later to his surprise he found, or thought he found, that she did not intend to make such distribution.

The exceptions as filed raised numerous questions, but they were all withdrawn but one, and the only question finally presented and decided in the probate court was whether Miss McMullen had renounced and relinquished her rights under item V whatever those rights might be. While the three parties to the interview of June 18—namely, Mr. Alfred Riggs, coexecutor; Mr. Bornet, assistant trust officer of the corporate executor; and Miss McMullen—differ somewhat

in their accounts of their conversation, they all agree that their interview produced her letter. In this connection Mr. Bornet testified that: "I cannot recall offhand whether Mr. Riggs and myself told Miss McMullen what her rights were under item V of the will, but we discussed that provision. * * * To the extent of knowing to whom to distribute the property, Mr. Riggs or I told her if she should die before she cleaned up the matter it would leave the trust company in an awkward position. We discussed with Miss McMullen the matter of item V, and I have a recollection that Miss McMullen seemed to gather the idea that it was feasible to leave some evidence behind as to what would happen to the property in the event of her death. I suppose to make certain it would go in a certain way. We discussed all angles of that generally and it resulted in this letter being written and sent us. My recollection is that we indicated to her that it might be an advisable thing for her to write such a letter."

Mr. Riggs testified that: "There was a discussion as to what might happen to the property in the event Miss McMullen should pass on. I told her that I had every confidence in her and felt certain it would be her intention to carry out Miss Riggs' wishes absolutely, but if she should die there might be some serious complications in the distribution of the property on account of possible claims by her heirs."

Miss McMullen testified that she was distressed and angry at the suggestion that her relatives would make trouble in the event of her death, and that she should write a letter to prevent this possibility. But she wrote it and delivered it herself the next morning; that she did not then understand that she had any individual rights in the matter; and that the trust officer of the company sent for her the following day and said: "What do you mean by writing this; it has no legal value."

From this testimony it is doubtful whether any one concerned with the matter intended any efficacy for the letter if Miss McMullen should live until distribution was made by the executors, which she has done.

The evidence indicates that the executors neither sought nor intended a general renunciation of the legacy, and the letter itself, written in the circumstances related, merely states that Miss McMullen relinquishes any claim to the estate beyond her annuity and considers "the implied bequest in item V solely in the light of a trusteeship to carry out the wishes of the deceased as per memorandum."

In that language we see no declination to accept the property from the executors when distributable by them, whatever disposition thereof might be proper thereafter.

This was also the view taken by the probate court as appears from the following language of the judge in passing on the exceptions:

"I very much doubt that the letter signed by Miss McMullen on June 19, 1930, could be construed as a rejection and renunciation of the articles bequeathed in item V.

"She says she considers the implied bequest in item V in the light of a trusteeship. She does not say she refuses to act as trustee."

From all of this it is clear that whether or not the words used by testatrix in the clause in question, "my wishes with respect to which are fully understood by her," created a trust was not presented to the probate court for decision and is not now before us. Here a narrow issue was tendered to a court of limited jurisdiction which decided only that a legatee had not renounced her rights, whatever they might be, in a certain legacy by a certain letter, and consequently ordered the legacy to be delivered to her.

The court construed the legatee's letter, but did not construe the will, and it decided nothing as to the nature of the estate which the legatee takes in the legacy.

We affirm this order, without prejudice to the right of any person in interest to proceed as he may be advised in respect of the nature and extent of Miss McMullen's rights in the property carried by the legacy.

It is thought the following cases support this view: Defrecse v. Lake, 109 Mich. 421, 67 N. W. 505, 32 L. R. A. 744, 63 Am. St. Rep. 584; In re Bryce's Estate, 194 Pa. 135, 44 A. 1076; Stebbins v. Lathrop, 4 Pick. (Mass.) 43; Tarr v. Robinson, 158 Pa. 62, 27 A. 859; Doe v. Smyth, 6 Barn. & Cress (E. C. L.) 113; Goodrum v. Goodrum, 56 Ark. 532, 20 S. W. 353; Langan Realty Co. v. Dixon, 46 S. D. 170, 191 N. W. 444; Webster v. Gilman, 1 Story, 499, Fed. Cas. No. 17335.

Affirmed.