THOMAS VARNEY *versus* ISAAC STEVENS.

22 331
95 127

Where a testator in his will, after having said that, " as touching my worldly estate, I give, devise and dispose of the same in the following manner and form," and after directing that his " debts and funeral charges be first paid," without stating by whom or from what fund, proceeded thus : — " My will is, that my said wife Dorothy Varney, shall have the whole of my estate real and personal during her natural life," and made no other devise or bequest in his will ; *it was held*, that Dorothy Varney took but an estate for life in the land.

It is the duty of a tenant for life to cause all taxes assessed upon the estate during his tenancy to be paid; and if he neglects it, and thereby subjects the land to be sold to pay such taxes, and afterwards receives a release of the title acquired under that sale, it will but extinguish that title, and can give him no rights to hold under it against the reversioner.

Where the occupant of land has a legal right to the possession thereof as tenant for life, he is to be considered as occupying according to his legal rights, and not as a wrongdoer, and he cannot establish any title therein by disseizin against the reversioner ; his possession cannot be adverse ; and he cannot, therefore, be entitled to "betterments" against the reversioner " by virtue of a possession and improvement" under the statute.

WRIT of entry demanding one undivided ninth part of a farm in Windham.

Jonathan Varney made his will in November, 1802, and afterwards died seised of the land in controversy, and the will was duly proved and allowed in September, 1806. Varney left a wife but never had children. Excepting the formal parts the whole will was as follows.

" Touching such worldly estate wherewith it has pleased God to bless me in this life, I give, devise and dispose of the same in the following manner and form.

" Imprimis. My will is, that all my just debts and funeral charges be first paid.

" Item. My will is, that my dearly beloved wife Dorothy Varney, whom I likewise constitute, make and ordain my sole executrix of this my last will and testament, my will is, that my said wife Dorothy Varney shall have the whole of my estate, real and personal, during her natural life."

The demandant is one of the brothers and heirs at law of Jonathan Varney. The demandant also proved, that Stevens,

the tenant, some few years after the death of the testator, and more than thirty years next before the commencement of this suit, married Dorothy Varney, the widow of Jonathan Varney, and has continued to live thereon ever since. She died about two years before the commencement of this suit.

The tenant offered in evidence a deed of the demanded premises from Woodbury Storer, Collector of the United States direct tax, dated August 11, 1818, to Daniel Howe, acknowledged and recorded the same day; a deed from Howe to Staples of the same, dated the same day, and a deed from Staples to Stevens, dated Jan. 9, 1819, both acknowledged and recorded. No objection was made to the execution or delivery of these deeds. WHITMAN C. J. presiding at the trial, ruled that these deeds were not available to the defendant for any purpose in this suit, unless he should first prove that the Collector had complied with all the requirements of law previous to making sale of the property, and rejected the deeds, no such evidence having been introduced.

The tenant thereupon became defaulted; but the default was to be taken off, if the deeds ought to have been admitted in evidence, and could have availed the tenant by way of defence, or as a foundation for a claim for betterments for the improvements made by him since the deed from Staples to him.

*Preble* argued for the tenant.

*Deblois*, for the demandant, contended that the widow of Jonathan Varney took but an estate for life in the demanded premises. The devise was expressly for the term of her life, and there is not one word in the will enlarging such estate. On the marriage, the tenant acquired an estate during their joint lives, which terminated by her death but two years before the bringing of our suit.

The first objection interposed to our recovery is under an alleged sale for United States direct taxes. Our first answer is, that those deeds were inadmissible, because there was no evidence, that the collector could legally make the sale. 10 Mass. R. 105; 1 Greenl. 306; 7 Mass. R. 488; 14 Mass. R.

177 ; 16 Wend. 550 ; 4 Peters, 349. Our second ; that the permitting the land to be sold for taxes by the tenant for life, during the continuance of his title, and becoming a purchaser under such sale, was a fraud on the reversioner, and passed no title. Story's Agency, 202 ; 1 Story's Eq. 321 ; 3 Sumn. 476 ; 1 Vern. 276, 284 ; 2 Johns. C. R. 257 ; 7 Pick. 1 ; 13 Pick. 272 ; 10 Wend. 351 ; 22 Wend. 123 ; 8 Wend. 175 ; 6 Wend. 228 ; Co. Lit. 232 ; 3 Pick. 149. Our third answer is : — That the release to Stevens, holding the estate for life, of any title acquired by the sale for taxes which he should have paid, enures to the reversioners. Shep. Touch. Release, 325, Co. Litt. 275, § 470 ; Cro. Eliz. 718 ; 1 Fairf. 306.

Where a legal title to hold land is disclosed to the Court, the party shall not be admitted to say he holds by wrong. *Tinkham* v. *Arnold,* 3 Greenl. 120 ; *Liscomb* v. *Root,* 8 Pick. 378.

This is not a case where betterments can be allowed under our statutes. The entry into possession was under the life estate of the widow, and was not adverse to the title of the reversioners. 8 Pick. 376 ; 15 Mass. R. 291 ; 15 Pick. 141 ; 1 Greenl. 91 ; 13 Mass. R. 241 ; 1 Greenl. 315.

The opinion of the Court was drawn up by

SHEPLEY J. — The last will of Jonathan Varney, deceased, contains this clause : " My will is, that my said wife Dorothy Varney shall have the whole of my estate, real and personal, during her natural life." The general rule is, that a devise of lands without words of inheritance, gives only an estate for life. If the devise be accompanied by a personal charge upon the devisee, it is indicative of an intention to give a fee. And it has been decided, that a devise of uncultivated lands, without words of inheritance, gives a fee. In this case there was no personal charge imposed upon the devisee, and there was an express limitation of the devise by the words " during her natural life." And the introductory words, " as touching my worldly estate," " I give, demise, and dispose of the same in the following manner and form," cannot be considered as ex-

hibiting an intention to give a fee in contradiction of the express limitation. *Crutchfield* v. *Pearce*, 1 Price, 353.

The tenant offered certain deeds, showing a sale of the premises by a collector of taxes, and a release of that title to himself. If it had been admitted, he would have taken under such a release according to his title; and the reversioners according to theirs. "A release of a right, made to a particular tenant for life, or in taile, shall aid and benefit him or them in the remainder." Co. Litt. § 453, and 267, b.

It was moreover the duty of the tenant for life to cause all taxes assessed upon the estate during his tenancy to be paid; and by neglecting it, and thereby subjecting the estate to a sale, he committed a wrong against the reversioners. And when he received a release of the title, if any were acquired under that sale, he would be considered as intending to discharge his duty by relieving the estate from that incumbrance. To neglect to pay the taxes for the purpose of causing a sale of the estate to enable him to destroy the rights of the reversioners, would have been to commit a fraud upon their rights. This is not to be presumed. On the contrary he must be presumed to have intended by procuring that release to extinguish the title under that sale.

Having a legal right to the possession of the estate during the life of his wife, he is to be considered as occupying according to his legal rights, and not as a wrongdoer. "His possession is to be construed according to his rights." *Liscomb* v. *Root*, 8 Pick. 376. He cannot therefore establish any title as a disseisor against the reversioner; and for that purpose only could the deeds offered have been received as evidence. To have established a title under them superior to that of the reversioner's, it would have been necessary to make some proof of the preliminary proceedings so far at least, as they were to be derived from recorded and documentary evidence, even after such a lapse of time. *Blossom* v. *Cannon*, 14 Mass. R. 177.

As the tenant is considered as having during the life of his wife, occupied the estate according to his legal title, his possession could not be adverse to the title of the reversioners;

and he cannot be entitled to claim "by virtue of a possession and improvement" under the statute, while he was thus occupying under a subsisting and valid title.

*Judgment on the default.*