## PIKE *v.* WASSELL.

Certain lands in Arkansas, liable to confiscation under the act of July 17, 1862 (12 Stat. 589), and belonging to A., a non-resident of the State, were seized Feb. 16, 1865, by the marshal, pursuant to instructions from the district attorney, who, on the 17th of that month, filed a libel of information against them in the proper District Court of the United States. On the following day, a warrant of arrest and monition was issued and duly served. The libel was amended April 5, so as to embrace other lands of A. On that day a decree of condemnation, forfeiture, and sale of all the lands was entered by that court, and they were sold on the 28th of that month by the marshal, under a *venditioni exponas.* The purchasers subsequently conveyed them to B. The decree of condemnation was affirmed by the Circuit Court. A writ of attachment, sued out of one of the courts of Arkansas, March 9, 1865, at the suit of sundry creditors of A., was on that day levied upon the same lands. A., by his attorney, entered his appearance to the suit, and judgment was rendered against him Sept. 29. All of said lands were sold by the sheriff under a *fieri facias.* B. became the purchaser, and refuses to pay taxes upon them, in order that, by buying them at a sale for delinquent taxes, his title may be perfected. A. is still living, and his children brought this suit. *Held*, 1. That the appearance of A. did not discharge the lien of the attachment. 2. That the levy of that writ by the sheriff upon the lands seized by the marshal was void, and that B.'s interest in them is determinable upon the death of A. 3. That the decree of condemnation did not divest the rights of the attaching creditors in the lands not seized by the marshal, and that B.'s title to them in fee, acquired by his purchase at the sheriff's sale, was not affected by the proceedings in

confiscation, and the sale under them. 4. That the affirmance by the Circuit Court of the decree gave no validity to it as against the attaching creditors. 5. That the heirs apparent or presumptive of A. have, in regard to the lands so seized and sold by the marshal, a right to protect their estate from forfeiture or incumbrance, and that B.'s refusal to pay the taxes on them presents a proper case for relief in a court of equity.

APPEAL from the Circuit Court of the United States for the Eastern District of Arkansas.

*Mr. Luther H. Pike* for the appellants.
*Mr. William M. Randolph* for the appellees.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

In *Wallach* v. *Van Riswick*, 92 U. S. 207, 208, we decided that after a seizure and an adjudicated condemnation and sale, under the Confiscation Act of July 17, 1862, 12 Stat. 589, of the lands of one engaged in rebellion against the United States, there was " left in him no estate or interest of any description which he could convey by deed, and no power which he could exercise in favor of another." We also held, p. 213, that the joint resolution passed contemporaneously with the approval of the act, 12 Stat. 627, was " intended for the benefit of his heirs exclusively, to enable them to take the inheritance after his death." As to him, the forfeiture was complete and absolute; but the ownership, after his death, was in no wise affected, p. 209, except by placing it beyond his control while living.

A seizure of the property was necessary to give the court jurisdiction for its condemnation. *Miller* v. *United States*, 11 Wall. 294, 296; *Pelham* v. *Way*, 15 Wall. 201; *Brown* v. *Kennedy*, id. 597; *The Confiscation Cases*, 20 Wall. 108. The proceedings in behalf of the United States were commenced by the seizure, and the decree of condemnation and sale, without any doubt, vested in the United States, or the purchaser at the sale, the interest which the person proceeded against had in the property when the seizure was made, free from all intermediate conveyances or incumbrances, whether the result of the voluntary act of the owner or the action of his creditors against him. Whatever interest he had in the property had been seized, as

forfeited to the United States, and placed, pending the suit, beyond his reach, or that of his creditors.   All subsequently acquired rights were subject to the prior claim of the United States, if perfected by a decree of condemnation.

In this case, it appears that the United States seized lot 10, nine feet off the east side of lot 9, and two and one-half feet off the west side of lot 11, in block 1, west of the Quawpaw line, and the undivided half of the west half of lots 1, 2, and 3, in block 81, Feb. 16; and on the next day filed their libel of information against this property in the District Court.   A warrant of arrest and monition was issued on the next day, and duly served.   The lots thus proceeded against were not levied upon under the attachment issued out of the Pulaski Circuit Court until March 9.   Consequently, as to this property the attachment was defeated by the decree of condemnation, and the defendants acquired no title through the proceedings in the State court.   All the interest they have in it comes through the confiscation sale, and terminates upon the death of Albert Pike, to whom it belonged when seized.

But as to the remainder of the property, there never was any seizure by the United States; and the amendment to the libel, upon which alone the decree of condemnation rests, was made long after the levy of the attachments.   When levied upon, therefore, the property was open to attachment; and the subsequent condemnation, without a previous seizure, did not divest the attaching creditors of any rights acquired by their proceedings.   As to them, the court had no jurisdiction, because it had never taken the property, and had never issued its warrant of arrest or monition.   The affirmance of the decree under the writ of error to the Circuit Court, prosecuted by Albert Pike, operated only upon him.   The creditors were no more a party to the proceedings in error than they had been to the original suit.

The appearance of Albert Pike to the attachment suits did not, under the law of Arkansas, discharge the lien of the attachment.   No bond was given, such as was required for that purpose.   Gould's Dig. c. 17, sect. 15, p. 171; *Delano* v. *Kennedy,* 5 Ark. 459.

It follows, therefore, that the interest covered by the attach-

ment. levied upon the part of the property not seized by the United States has never been confiscated, and that the title which Wassell has since acquired under it may be enforced against the heirs of Albert Pike after his death, notwithstanding the confiscation. It is unnecessary to decide what would have been his rights if a seizure had actually been made by the United States after the attachments.

Our conclusion, then, is, that as to the property actually seized by the United States and condemned by the decree the defendants hold only by virtue of the confiscation sale, but that as to so much as was not actually included in the seizure the defendant Wassell did acquire, by the proceedings in the State court, all the title of Albert Pike at the time of the levy of the attachments.

It only remains to inquire whether the children of Albert Pike stand in such a relation to the property confiscated, and not affected by the attachment proceedings, that they may maintain an action to require the defendants to keep down the taxes during the life of their father.

There can be no doubt but the defendants, as tenants for life, are bound in law to pay the taxes upon the property during the continuance of their estate. *Vamy* v. *Stevens*, 22 Me. 334; *Cairns* v. *Chabut*, 3 Ed. (N. Y.) Ch. 312. This the defendants do not dispute; but they insist that, until the death of the father, the children have no interest in the property, and, therefore, cannot appear to protect the inheritance.

It is true, as a general rule, that so long as the ancestor lives the heirs have no interest in his estate; but the question here is as to the rights which the confiscation act has conferred upon the heirs apparent or presumptive of one whose estate in lands has been condemned and sold. In *Wallach* v. *Van Riswick*, without undertaking to determine where the fee dwelt during the life-estate, we decided that it was withheld from confiscation exclusively for the benefit of the heirs. They, and they alone, could take it at the termination of the life-estate. The children of Albert Pike, as his heirs apparent, are also apparently the next in succession to the estate. Either they or their representatives must take the title when their father dies. If they do not hold the fee, they are certainly the only persons

now living who represent those for whose benefit the joint resolution of Congress was passed. They, at least, appear to have the estate in expectancy. Under these circumstances, as there is no one else to look after the interests of the succession, we think they may properly be permitted to do whatever is necessary to protect it from forfeiture or incumbrance.

The defendants admit that they have determined not to pay the taxes upon the property. The danger of incumbrance by reason of this failure to perform their duties as tenants for life is, therefore, imminent, and the case a proper one for a court of equity to interfere and grant appropriate relief. In *Cairns* v. *Chabut, supra,* when the tenant for life failed to keep down the taxes, an order was made for the appointment of a receiver of so much of the rents and income of the estate as should be necessary to pay off and discharge the amounts then in arrear. We see no reason why similar relief may not be granted in respect to the accruing taxes, in case the tenants fail to perform their duties in that behalf ; but, without undertaking to direct specifically as to the form in which the protection asked shall be secured, we shall reverse the decree, and remand the cause to the Circuit Court, with instructions to proceed in conformity to this opinion, as law and justice may require ; and it is

*So ordered.*