Ox the Merits.
George W. Stafford,
the executor, is the son of L. A. Stafford, deceased, and of Mrs. Sarah 0. Stafford, his widow, who has accepted the community.
It seems that the executor and the family of the deceased resided upon and enjoyed the fruits and revenues of the Edgefield plantation-from 1865 to 1875, but failed and neglected to pay the taxes thereon, which accumulated until they amounted, in November, 1875, to some $4000, when the property was advertised for sale to pay the same. The plaintiff went from New Orleans to Alexandria to attend this sale, and protect his interests as a mortgage creditor. At that offering the *859 property was put up in lots, and some lots were adjudicated to plaintiff, and some to George W. Stafford; together sufficient to cover the taxes. Stafford declined to comply with his bids, and the collector, upon that as a pretext, refused to make a deed to plaintiff for the lots he had bought, and announced that he would re-advertise the property for sale. On November 29,-1875, the property was again offered, and adjudicated to the.State, for the taxes. On December 3, following, plaintiff deposited $4000 with the Fiscal Agent of the State, playable to the tax-collector of Rapides, and procured a letter from the Auditor advising -the collector of said deposit, as c‘ given to cover the purchase from the State of the lands ” in question, and requesting the collector to make title to plaintiff. It is not disputed that the collector received these notices before he had made any conveyance to Mrs. Stafford. The collector in his testimony says: “ I had received the Auditor’s letters of December 3 and 13, 1875, before the title was made to Mrs. Stafford. This whole business was clone with and through George W Stafford, and "I never met Mrs. Stafford in the transaction, nor had I any conversation •with her at all.”
To our minds Mrs. Stafford was the mere alter ego of George W. Stafford in these transactions. Good conscience forbids that the executor and widow in community of the deceased, under the circumstances of this case, should be permitted to take advantage of their own wrong, and thus deprive creditors of the estate of its effects. It was the duty of the executor, as, also, of the widow in community — they were under both a legal and moral obligation — to keep down these taxes, and to preserve the property for the creditors. Mrs. Stafford was herself personally bound, as widow in community, for one half of these taxes and one-half of these debts. The transaction can only be regarded and treated as a payment of the taxes, a redemption of the property for the benefit of the estate of L. A. Stafford.
Cooley on Taxation, p. 345, 346, says:
“ Some persons, from their relation to the land or to the tax, are precluded from becoming purchasers. * * So the mortgagor, remaining in possession of the land, owes it to the mortgagee to keep down the taxes, and the law would justly be chargeable with connivance at fraud and dishonesty if a mortgagor might allow the taxes to become delinquent, and then discharge them by a purchase which would at the same time cut off his mortgage. There is a general principle applicable to such cases, that a purchase made by one whose duty it was to pay the taxes shall operate as payment only; he shall acquire no rights as against a third party by a neglect of the duty which he owed to such party. The principle is universal, and is so entirely reasonable as scarcely to need the support of authority. Show the exist *860 •ence of the duty and the disqualification is made out in every instance.”
In 11 111. p. 383, the court say:
“It would be inequitable to allow Shaw, after mortgaging- the lands, to suffer them to be sold for taxes, and by buying them in himself defeat the lien of the mortgage. His purchase of the lands at a tax-sale, under such circumstances, must be regarded in the light of a payment •of the taxes by him.”
22 Maine 334 : “It was, moreover, the duty of the tenant for life to •cause all taxes assessed upon the estate during his tenancy to be paid, •and by neglecting it, and thereby subjecting the estate to a sale, he committed a wrong against the reversioners. And when he received a release of the title, if any were acquired under that sale, he would be considered as intending to discharge his duty by relieving the estate -from that incumbrance. To neglect to pay the taxes for the purpose •of causing a sale of the estate to enable him to destroy the rights of the reversioners would have been to commit a fraud upon their rights. This is not to be presumed. On the contrary, he must be presumed to have intended by procuring that release to extinguish the title under that sale.”
25 Cal. 45: “If the defendant toas under any legal or moral obliga'tion to pay the taxes, he could not, by neglecting to pay the same, and allowing the land to be sold in consequence of such neglect, add to or strengthen his title by purchasing at the sale himself, or by subsequently buying from a stranger who purchased at the sale. Otherwise, he would be allowed to gain an advantage from his own fraud or negligence in failing to pay the taxes. This the law does not permit, either directly or indirectly.”
42 Maine 244, et seq., was a case as follows: A, for a valuable consideration, agreed to convey to B certain premises within two years, provided B paid a stipulated su'm of money within that time to A, and, also, a.ll taxes that might be levied on the premises, and an agreed sum anmially for rent. B failed to perform the conditions, allowed the property to be sold for taxes, purchased the tax title, and defended against A by force of that title. The court held: “ It was the duty of the tenant to pay the taxes upon the demanded premises. The -omission to do so -was a violation of good faith and a breach of the condition on which be occupied them. To permit him to set up a title which he has obtained by a violation of bis own duty, if it were in other respects good, would be most manifestly inequitable, and in fraud of the rights of the demandant. Such a defense can not prevail, either in law or in equity, and it requires no small degree of assurance to set it up in a court of justice.”
The judgment appealed from is erroneous, and it is ordered, *861 adjudged, and decreed that the same be and is hereby annulled, avoided, and reversed; and, proceeding to render such judgment as should have been rendered, it is now ordered, adjudged, and decreed that the plaintiff, Henry Renshaw, have judgment against the estate of Leroy A. Stafford, deceased, represented by George W. Stafford, executor, for the sum of $13,500, with eight per cent interest on $3375 thereof, from January 23,1861, and like rate on like sum thereof from February 23,1861, a_nd like rate on like sum thereof from March 23, 1861, and like rate on the balance thereof from April 23,1861, till paid.
It is further ordered and decreed that, the special mortgage, as claimed and set forth in plaintiff’s petition, and in the act of mortgage by Leroy A. Stafford to West, Renshaw & Cammack, of date April 6, 1859, be and the sair e is recognized and made executory upon the property therein described to pay this judgment, and that said mortgaged property be seized and sold according to law for that purpose.
It is further ordered and decreed that the injunction prayed forby plaintiff be made perpetual against the defendants herein, and that the tax-sales referred to in plaintiff’s petition, whereby Mrs. Sarah 0. Stafford claims said property, as well as the transfers made by her to James Moore f n l Charles E. Jonette, be and they are each and all declared inopei afive, null, an 1 void as against the plaintiff in this suit.
It is further ordered that appellees pay all costs of this suit in the court below and of this court.
The Chief Jus'ice takes no p irt in this opinion.