NEW YORK GUARANTY & INDEMNITY CO. et al. v. TACOMA RAILWAY
& MOTOR CO. et al.

(Circuit Court of Appeals, Ninth Circuit.   February 20, 1899.)

No. 473.

1. TAXATION—VALIDITY OF ASSESSMENT—OWNERSHIP OF PROPERTY.
   The power house and other buildings of an electric street-railroad com-
   pany were situated on a tract of land, a part of which was owned by the
   company, and a part held under a lease for 25 years, which bound the
   company to pay the taxes thereon.   *Held*, that the company might prop-
   erly be regarded as the owner of the entire property, for purposes of tax-
   ation, and its assessment as an entirety was valid.

2. SAME—IMPROVEMENTS ON REAL ESTATE.
   Where a street-railroad company may properly be regarded as the
   owner, for the purposes of taxation, of leased land upon which its power
   house and plant are in part situated, such buildings are taxable, under
   the statutes of the state of Washington, as a part of the real estate.

3. SAME—RAILROAD RIGHT OF WAY—ACTUAL USE FOR OTHER PURPOSES.
   Under the statute of Washington (1 Hill's Ann. Code, § 1046) providing
   that all lands occupied and claimed exclusively as right of way for rail-
   roads must be assessed as a whole, and as real estate, at a certain sum
   per mile, a part of the designated right of way of a railroad, but which
   is in the actual use and occupation of a street-railroad company for pur-
   poses of its power plant, under a lease for 25 years, cannot properly be
   taxed as a part of the right of way of the railroad company.

Appeal from the Circuit Court of the United States for the Western
Division of the District of Washington.

This suit was brought on the equity side of the circuit court of the United
States for the Western division of the district of Washington to obtain a decree
adjudging the invalidity of, and canceling of record, certain taxes levied by
the county of Pierce and the city of Tacoma, respectively, upon certain prop-
erty now owned by the complainant Carr.   The property upon which the
taxes were levied consists of a power house and power plant used in operating
certain street-railway lines in the city of Tacoma, in Pierce county, state of
Washington, and a suburban line connecting the town of Steilacoom, in that
county, with the city of Tacoma.   On March 26, 1897, all of the property
mentioned, including the street-railway lines, was sold as an entirety by a
master of the court below, in pursuance of a decree entered by that court in a
suit brought therein by the New York Guaranty & Indemnity Company, trus-
tee, for the foreclosure of a trust deed of the property made to it for the secu-
rity of certain bonded indebtedness, at which sale the property was pur-
chased by one Levis, who afterwards conveyed it to the complainant Carr.
Of the proceeds of that foreclosure sale, there remained in the registry of the
court, when this suit was instituted, an undistributed balance of $13,451.88;
and the taxes here in question, standing delinquent against the power house
and power plant on the tax records of the county of Pierce and the city of
Tacoma, respectively, and it being the duty of the receivers appointed in the
foreclosure suit to discharge all valid taxes against the property, and the com-
plainant in that suit being entitled, as trustee, to receive, for distribution to
the bondholders, any surplus of the fund in court remaining after the dis-
charge of all the receiver's obligations, this suit was instituted jointly by the
trustee, complainant in the former suit, and the present owner of the property
under the sale in that suit, to contest the validity of the disputed taxes.   By
an amendment of the bill, certain taxes on lots in the Ridgedale addition to the
city of Tacoma, included in the railway property acquired by the complainant
Carr, and the validity of which was not disputed by the complainant's bill,
was included in the subject-matter of the present suit, to the end that the
decree to be entered therein, directing the payment of the fund in court of
such taxes as should be adjudged valid, might extend to the taxes on those

lots. No review of the decree of the court below in respect to the taxes on those lots, however, is here sought. The taxes levied upon the trackage of the Steilacoom Line were held by the court below to be invalid, and their cancellation was directed. To this part of the decree no objection was taken in any form. The remaining taxes controverted by the bill were held by the court below to be valid, and it is to reverse that part of the decree that the present appeal is brought. Those taxes were levied on the power house and power plant, together with the site thereof, by the county of Pierce in the years 1891, 1892, 1893, and 1895, and by the city of Tacoma in the years 1892 and 1893. The power house and power plant are situated upon a tract of land in the city of Tacoma, the westerly portion of which (that is to say, the part lying west of the east boundary of Cliff avenue produced) was, during the years of the contested tax levies, owned in fee by the Tacoma Railway & Motor Company, while the easterly portion of the tract (that is to say, all that part lying east of the east boundary of Cliff avenue produced) was during those years held by the motor company under a lease of date April 18, 1889, from the Northern Pacific Railroad Company for a term of 25 years from May 1, 1889; reserving an annual cash rental, and providing for the payment of the taxes by the lessee during the term of the lease. The motor company's part of the tract was formerly a part of Cliff avenue, a platted street of the city of Tacoma, and prior to the building of the power plant the city of Tacoma, at the instance of the Northern Pacific Railway Company, passed an ordinance, approved May 11, 1889, vacating that part of Cliff avenue now embraced in, and constituting the whole of, the part of the tract owned in fee by the motor company. Another street in the city, known as "A Street," adjoined the vacated portion of Cliff avenue on the west; and under the law of the state of Washington, and the provisions of the vacating ordinance, the title to the whole of the vacated strip passed to the Northern Pacific Company, as owner in fee of the whole land adjoining the vacated strip on the east, and the railroad company shortly afterwards, to wit, May 1, 1890, conveyed it in fee to the motor company. The Northern Pacific Railroad Company's ownership in fee of the leased part of the power-plant site was a matter of public record. That part of the power-plant site owned in fee by the motor company is about two-fifths, and the part leased from the Northern Pacific Company is about three-fifths, of the area of the whole site. The relative value of the two portions of the site is not made to appear. The improvements, which consist of a power house, power plant, and car barn, together with certain machinery, stand in about equal portions upon the two parts of the site; and the respective portions of the improvements are alleged in the bill, and found by the master, to be of about equal values. They are also alleged in the bill, and admitted by the answers thereto, and found by the master, to be "one entire and inseparable aggregation of buildings, structures, plant, and machinery, covering the whole of said tract, and neither the use nor the valuation thereof have been, or are, capable of segregation." For the years 1891, 1892, and 1893 the power-plant site was assessed as an entirety by the county of Pierce at $39,330, $27,500, and $27,500, respectively, and "improvements" thereon at $15,000, during each of those years. For the year 1895 the site was assessed by the county at $12,300, no assessment being made for improvements thereon. For each of the years 1892 and 1893 the site, as an entirety, was assessed by the city of Tacoma at $54,080, and improvements thereon at $18,000. The city taxes for the year 1892 having become delinquent, a portion of the property was sold therefor to the defendant Gove, to whom a tax certificate therefor was issued. The other taxes in question still stand delinquent on the rolls.

The sixth, eighth, eighteenth, nineteenth, twentieth, and part of the twenty-first findings of the master are as follows: "(6) That portion of said land upon which said power plant stood during said years, east of Cliff avenue, and described on said plat, Exhibit E, by the lines B-E, C-B, C-F, and F-E, was embraced within what was designated by the Northern Pacific Railroad Company, and listed by the county of Pierce, as the right of way of the Northern Pacific Railroad Company; but it was in the actual use and occupation of the Tacoma Railway & Motor Company for the purposes of the power plant." "(8) That during all the years from 1891 to 1896, inclusive, the Northern Pacific Railroad Company and its receivers paid all of the taxes assessed and

charged against the right of way of said Northern Pacific Railroad Company in the city of Tacoma." "(18) That the personal property of the Tacoma Railway & Motor Company was assessed during each of said years 1891 to 1896, inclusive, by the assessor of Pierce county, for the purpose of taxation, after having been duly returned to said assessor, and the same was duly equalized by the board of equalization; and said assessment included all of the personal property of said company, and, among other things, the power plant of said company, including buildings and machinery, as an entirety, and the line of street railway between Eleventh street, in the city of Tacoma, and a point in the town of Steilacoom,—being about twelve miles of track, substructures, and superstructures,—known as the 'Steilacoom Line.' That said Tacoma Railway & Motor Company and its receivers have heretofore paid all taxes levied and assessed against it as personal property. (19) That the taxes standing charged on the tax rolls of Pierce county for the years 1893, 1894, 1895, and 1896, on what is termed the 'Tacoma & Steilacoom Line,' were entered on the real-estate assessment rolls of said county, and embraced the same property entered upon the personal property assessment rolls of the Tacoma Railway & Motor Company, on which payment was made by said company. That the city of Tacoma in the years 1892 and 1893, added to the real-estate assessment on the property described on page 4 of this report the sum of $18,000 for improvements. That there were no improvements upon said lands that year, or any other year, other than the building, power plant, and machinery, which was an inseparable aggregation of building, machinery, car barn, etc., incapable of separate segregation or valuation; and all said power plant, and everything situate upon said land, was assessed by the city of Tacoma in the years 1892 and 1893, and by the county of Pierce in the years 1891 to 1896, inclusive, as personal property, and the taxes were paid on the same as personal property. (20) That all of the taxes described in the bill and in the evidence as having been charged and levied upon improvements upon the land described in the bill constitute a double assessment, in that said assessment on what is designated therein as on improvements is a duplication of the assessment of personal property returned and assessed for each and all of said years. That the taxes and assessments charged on account of right of way, substructures, and superstructures on the real-estate rolls of Pierce county on what is known as the 'Tacoma & Steilacoom Line,' and the taxes levied thereon by the authorities of Pierce county, are a double assessment, in that they are a duplication of the same property assessed and taxed under the head of 'Track Belonging to the Tacoma Railway & Motor Company,' and upon which payment had heretofore been made by the Tacoma Railway & Motor Company. (21) That during all of the year 1892 there was situate upon the lands above described, on page 4 of this report, a power house, power plant, and car barn belonging to and owned by said Tacoma Railway & Motor Company, which together constituted one entire and inseparable aggregation of buildings, structures, plant, and machinery, covering the whole of said tract, neither the use nor the value of which were or are capable of segregation, and which was so situated partly upon the portion of said land leased from said Northern Pacific Railroad Company and partly upon the land owned by said Tacoma Railway & Motor Company, as aforesaid, in about equal portions and values, upon said two parts of said tract, respectively. That in the year 1892 the defendant, city of Tacoma, by its authorized officers, undertook to, and did, assess the above-described lands as one tract, to and in the name of the Tacoma Railway & Motor Company, for purposes of municipal taxation of said city for said year, and so assessed the value of said tract at the sum of $54,080, and so assessed the value of the improvements on said tract, apart and separate from the land, at the sum of $18,000, and thereupon entered said assessments upon its assessment roll for purposes of its municipal taxation for the year 1892. That thereafter said city levied and extended on its tax rolls for said year 1892 the sum of $864.96, as taxes of said year charged against said tract, and the improvements thereon for municipal purposes of the city for said year. That the taxes so extended and entered in said tax rolls being unpaid at the date when, by force of the provisions of the charter of said city, the city taxes levied for the year 1892 became delinquent, said sum was entered by the authorized officer of said city as delinquent taxes

against said premises for the year 1892; and thereafter said land, together with the power plant, power house, and car barn thereon, was sold by said city of Tacoma, at a tax sale held in said city, pursuant to the provisions of its charter, on February 6, 1893, to the defendant Royal A. Gove for the sum of $999.48, which sum the said Royal A. Gove then and there paid to said city therefor, and thereupon a certificate of such sale was issued and delivered to said defendant Royal A. Gove by the authorized officer of said city, pursuant to the provisions of the charter of said city, and said defendant is now the owner and holder of said certificate."

The trial court sustained exceptions filed by the county of Pierce and the city of Tacoma and the defendant Gove, respectively, to that part of paragraph 6 of the master's findings which reads as follows, "And listed by the county of Pierce," and to that part of paragraph 19 which reads as follows, "And all said power plant, and everything situate upon said land so assessed by the city of Tacoma in the years 1892 and 1893, and by the county of Pierce in the years 1891 to 1896, inclusive, as personal property," and to that part of paragraph 20 of the master's findings which reads as follows, "That all of the taxes described in the bill and in the evidence as having been charged and levied upon improvements upon the land described in the bill constitute a double assessment, in that said assessment on what is designated therein as on improvements is a duplication of the assessment of personal property returned and assessed for each and all of said years."

All other exceptions to the findings and report of the master were by the court below overruled.

Thos. R. Shepard and Benjamin S. Grosscup, for appellants.

A. R. Titlow, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

On the part of the appellant it is contended—First, that the assessment of the land in question was void because embracing two separate tracts of diverse ownership; included in which is the second contention, that its assessment as a single parcel, without specifying the name of the known owner of the leased portion thereof, was void; third, that the assessment of the land was invalid, in so far as that part of it held under lease is concerned, on the ground that such part was embraced in the Northern Pacific Railroad Company's right of way, which was taxable under the laws of the state of Washington, and actually listed, assessed, and taxed at a certain sum per mile and the taxes thereon paid; fourth, that the power plant situated on the power-plant site in question was actually returned by the motor company in its lists of personal property for the years in question as personal property, and was actually so assessed, and the taxes paid, for which reason, it is claimed, the assessment of the same as improvements upon real estate was, pro tanto, a duplication of the personal assessment; and, lastly, that the power plant was properly assessable only as personal property, and its assessment as improvements upon real estate therefore void.

1. The assessments for the years 1891 and 1892 were made under the provisions of the revenue law of the state of Washington approved March 9, 1891, which, so far as the point now under consideration is concerned, are as follows:

"Sec. 45. The assessor shall make out in the real property assessment book, in numerical order, complete lists of all lands or lots subject to taxation,

showing the names of the owners, if known to him, and if unknown, so stated opposite each tract or lot in pencil memorandum, the number of acres, and the lots or parts of lots, or blocks, included in each description of property. * * *"

The assessments for the year 1893 were made under the provisions of the act of March 15, 1893, section 45 of which is as follows:

"Sec. 45. The assessor shall list all real property according to the smallest legal subdivision as near as practicable, and where land has been platted into lots and blocks, he shall list each lot or fraction thereof separately. The assessor shall make out in the real property assessment books, in numerical order, complete lists of all lands or lots subject to taxation, showing the names of the owners, if to him known, and if unknown, so stated opposite each tract or lot in pencil memorandum, the number of acres, and lots or parts of lots included in each description of property. * * *"

The assessment for the year 1895 was made under the provisions already quoted from the revenue law of 1893, which, however, had been amended by section 4 of an act approved March 23, 1895, by the insertion of the following provision at the end of the first sentence of section 45 of the act of 1893:

"Provided, that when several lots in any block, or several blocks in any plat of any addition, subdivision or townsite, or several tracts of land, shall be owned by any one person, firm, syndicate or corporation, the assessor may group such lots and blocks and tracts so far as practicable."

There can be no doubt that these statutory provisions, under and by virtue of which the assessments in question were made, require separate assessment of tracts of land of diverse ownership. Obedience to such requirement is essential to the validity of the proceedings. "It cannot," says Judge Cooley in his work on Taxation (2d Ed., p. 400), "be held in any case that it is unimportant to the taxpayer whether this requirement is complied with or not. Indeed, it is made solely for his benefit; it being wholly immaterial, so far as the interest of the state is concerned, whether separate estates are or are not separately assessed." The supreme court of the state of Washington, where the lands in question are situated, distinctly held in the case of Lockwood v. Roys, 11 Wash. 697, 703, 40 Pac. 346, that:

"A separate valuation of distinct parcels of land, when required by the statute, is made for the benefit of the owner, and involves a substantial right, and that when he is deprived of such substantial right the assessment is invalid and void."

That the decision of such a question by the highest court of the state, in respect to the assessment for taxes of land within the state, is binding on the federal courts, is well settled. The court below, however, held that the motor company was the owner, for the purposes of taxation, of the entire power-plant site, saying in its opinion:

"By the terms of the lease, the railway and motor company was obliged to pay the taxes on the leased ground, and was the occupant, and was the owner in fee and occupant of that part of the ground covered by the power plant and car barn, not included in the lease. Therefore it was the owner, for the purposes of taxation, of the whole property."

The case shows that the power plant covers the entire power-plant site, and that the improvements on the land form an inseparable mass, incapable of division for use or valuation. They were so erect-

ed by the motor company upon the land, to one portion of which it held the fee, and for the remaining portion a lease for the term of 25 years, by the terms of which lease it covenanted to pay all taxes levied on such leased premises. We agree with the court below that, under such circumstances, the motor company may be properly treated, for the purposes of taxation, as owner of the property. It is not essential, under all circumstances, that the fee be in the party against whom the assessment is made. Thus, in Pike v. Wassell, 94 U. S. 711, certain lands held by Pike had been condemned and sold under the confiscation act of July 17, 1862 (12 Stat. 589), which forfeiture, as to him, was complete and absolute, but the ownership of which property, after his death, was vested in his heirs by virtue of the joint resolution of congress passed contemporaneously with the act of confiscation. The defendants to the suit held under the confiscation sale, and, having refused to pay the taxes levied upon the property, Pike's children sought by the suit to compel the defendants to pay them during the life of their father. The court said:

"It only remains to inquire whether the children of Albert Pike stand in such a relation to the property confiscated, and not affected by the attachment proceedings, that they may maintain an action to require the defendants to keep down the taxes during the life of their father. There can be no doubt but the defendants, as tenants for life, are bound in law to pay the taxes upon the property during the continuance of their estate. Varney v. Stevens, 22 Me. 334; Cairns v. Chabert, 3 Edw. Ch. 312. This the defendants do not dispute; but they insist that, until the death of the father, the children have no interest in the property, and therefore cannot appear to protect the inheritance. It is true, as a general rule, that, so long as the ancestor lives, the heirs have no interest in his estate; but the question here is as to the rights which the confiscation act has conferred upon the heirs apparent or presumptive of one whose estate in lands has been condemned and sold. In Wallach v. Van Riswick, 92 U. S. 202, without undertaking to determine where the fee dwelt during the life estate, we decided that it was withheld from confiscation exclusively for the benefit of the heirs. They, and they alone, could take it at the termination of the life estate. The children of Albert Pike, as his heirs apparent, are also apparently the next in succession to the estate. Either they or their representatives must take the title when their father dies. If they do not hold the fee, they are certainly the only persons now living who represent those for whose benefit the joint resolution of congress was passed. They, at least, appear to have the estate in expectancy. Under these circumstances, as there is no one else to look after the interests of the succession, we think they may properly be permitted to do whatever is necessary to protect it from forfeiture or incumbrance. The defendants admit that they have determined not to pay the taxes upon the property. The danger of incumbrance by reason of this failure to perform their duties as tenants for life is therefore imminent, and the case a proper one for a court of equity to interfere and grant appropriate relief. In Cairns v. Chabert, supra, when the tenant for life failed to keep down the taxes, an order was made for the appointment of a receiver of so much of the rents and income of the estate as should be necessary to pay off and discharge the amounts then in arrear. We see no reason why similar relief may not be granted in respect to the accruing taxes, in case the tenants fail to perform their duties in that behalf; but, without undertaking to direct specifically as to the form in which the protection asked shall be secured, we shall reverse the decree, and remand the cause to the circuit court, with instructions to proceed in conformity to this opinion, as law and justice may require."

In Kennedy v. Railroad Co., 62 Ill. 395, by an act of the legislature of the state a person or company operating a railroad was made

liable for taxes upon the rolling stock used upon such road, without reference to the ownership of the road or the rolling stock so used. By a written agreement with the Pullman Palace-Car Company, the railroad company employed on its road sleeping cars of the car company, hauled the same, furnished fuel and lights, kept them in running order, and received its ordinary fare for the transportation of passengers in them. The car company was bound by the agreement to keep in repair the carpets, upholstery, and bedding, excepting repairs necessary from accident and casualty while upon the run of the road, received a fare for extra accommodation, and furnished its own employés to receive the same, and wait upon the passengers. It was held that, although the general property in the cars was in the car company, yet the railroad company had such a community of interest and such a qualified property in them for the time being, that, for the purposes of taxation, they must be regarded, under the statute, as belonging to the rolling stock of the railroad company, and subject to be taxed as such. The court said, among other things:

"There are not unfrequently cases in the law where one having a less estate in property than that of the absolute ownership fulfills the condition of being owner. The requirement, too, of the statute, is to list, not the rolling-stock which the company owns, but the rolling stock 'belonging' to the company. We are of opinion that the appellee has such a qualified property in these sleeping cars that, for taxable purposes, they may be regarded, within the fair meaning of the statute, as 'belonging' to the rolling stock of the railroad company, and that they are subject to be taxed as forming a portion of the same. * * * We do not conceive, as is objected, that this would involve the result of double taxation of both the railroad company and the car company. The liability of the railroad company to pay taxes on the cars, as a portion of its rolling stock, would operate to exempt the company from liability to pay the taxes as owner of the cars. The railroad company would be viewed as the owner pro hac vice."

We are of opinion that the motor company's exclusive possession and enjoyment for the period of 25 years of the leased portion of the power-plant site, with a covenant binding it to pay the taxes thereon, "fulfills the condition of being owner" for the purposes of taxation.

2. This conclusion upon the question of ownership also disposes of appellants' contention that the power plant was only properly assessable as personal property, for that contention is based entirely upon that provision of the Washington statutes declaring that:

"Personal property, for the purposes of taxation, shall be construed to embrace and include * * * all improvements upon lands the fee of which is still vested in the United States or in the state of Washington or in any railroad company or corporation. * * *" 1 Hill's Ann. Code, § 1020.

But section 1051 of the same statutes provides, among other things, that:

"All the real estate, including the stations and other buildings and structures thereon, other than that denominated railroad track, belonging to any railroad, shall be listed as lands or lots, as the case may be, in the county where the same are located."

And there are general provisions of the same statutes to the effect that:

"Real property, for the purposes of taxation, shall be construed to include the land itself * * * and all buildings, structures and improvements * * * and that in assessing any tract or lot of real property, the value of the land, exclusive of improvements, shall be determined, and also the value of all improvements and structures thereon, and the aggregate value of the property, including all structures and other improvements." 1 Hill's Ann. Code, §§ 1019, 1059.

It is not necessary to decide whether the term "improvements," used in section 1020, should be given the broad interpretation claimed for it on the part of the appellants, for the reason that as the motor company is to be regarded, for the purposes of taxation, as the owner of the leased portion of the power-plant site, in so far as concerns the assessment of the land itself, it must necessarily be so regarded in so far as concerns the improvements thereon, erected at its own expense and for its own use, under the provisions of the lease already mentioned.

3. Another statute of the state in force when the assessments in question were made provides as follows:

"All lands occupied and claimed exclusively as the right of way for railroads by railroad companies or corporations, with all the tracks and all the substructures and superstructures which support the same, must be assessed as a whole and as real estate, without separating the same into lands and improvements, at a certain sum per mile. * * *" 1 Hill's Ann. Code, § 1046.

The findings of the master, as approved by the court, show that the leased portion of the power-plant site "was embraced within what was designated by the Northern Pacific Railroad Company as the right of way of the Northern Pacific Railroad, but it was in the actual use and occupation of the Tacoma Railway & Motor Company for the purposes of a power plant." This actual use and occupation by the motor company, as elsewhere appears in the findings, was under the 25-year lease, and was not only unconnected with the business of the railroad company, but was altogether antagonistic to its occupation as the right of way of that company. Under such circumstances, it is plain that it could not be properly taxed, under the statute cited, as a part of the Northern Pacific Company's right of way, and there is no finding or evidence that it was in fact so assessed.

4. The power plant, consisting, as it does, of improvements on land of which the motor company must, for the purposes of taxation, be deemed the owner, was properly assessable as "improvements" thereon. Under the provisions of section 1059 of the Washington statute, above cited, whether such proper assessment, or the lien for the unpaid taxes thereon, could be in any way affected by the improper assessment of such improvements as personal property, and the payment of such taxes, need not be decided, for the reason that the record does not sufficiently show that the power plant was in fact assessed to the motor company as personal property. In finding 19 the master found, among other things, that "all said power plant and everything situate upon said land was assessed by the city of Tacoma in the years 1892 and 1893, and by the county of Pierce in the years 1891 to 1896, inclusive, as personal property, and the taxes were paid on the same as personal property"; and in finding 20, that "all of the

taxes described in the bill and in the evidence as having been charged and levied upon improvements upon the land described in the bill constitute a double assessment, in that said assessment on what is designated therein as on improvements is a duplication of the assessment of personal property returned and assessed for each and all of said years." To these specific portions of findings 19 and 20 the defendants excepted, which exceptions were sustained by the court below. But an exception to a similar clause embodied in finding 18 of the master (relating, however, only to the assessment made by Pierce county) is covered by a general ruling of the court immediately following the foregoing specific rulings, stating that "all other exceptions to the findings and report of the master in chancery are overruled." It is not to be supposed that the court, after considering specifically the portions of finding 19 and 20 to which exceptions were taken, and after, by its ruling thereon, holding, in effect, that the evidence was insufficient to show that the improvements had been assessed to the motor company as personal property, intended, in the next breath, to hold the exact opposite. It is quite evident, we think, that the court inadvertently overlooked the fact that the clause of finding 19 that it had specifically considered and ruled upon was also embraced in another finding. Indeed, the findings should have contained but one statement of the same fact. It is just such unnecessary repetitions that add to the bulk of judicial proceedings, resulting in unnecessary costs to the parties thereto, and unnecessary labor to the courts. Moreover, the appellants, by their assignment of errors, call in question, among other things, the ruling of the court in sustaining the exception to the same matter embraced in findings 19 and 20. Under the circumstances stated, we think we are justified in examining the evidence to see whether the appellants proved that the improvements upon the power-plant site were in fact assessed as personal property. As has been seen from the statement of facts, the improvements on the power-plant site were assessed by the county of Pierce for each of the years 1891, 1892, and 1893 at $15,000, and for the year 1895 at $12,300; and for each of the years 1892 and 1893 they were assessed by the city of Tacoma at $18,000. It has further been seen that those improvements consist of a power house, car barn, and certain machinery; the plant covering the entire site, and forming an inseparable mass, incapable of division for use or valuation. The tax lists for the years 1892 and 1893 handed in by the motor company to the assessor of Pierce county contain various items of personal property, including "machinery," valued at $40,000. Its statement for the year 1893 handed to the assessor of the city of Tacoma included "personal property" valued at $84,170; and for the year 1893, "personal property, inside of Tacoma," valued at $50,500. In so far as the county assessments are concerned, it is quite certain that the term "machinery" cannot be held to include the power house and car barn, inseparably connected with which, according to the findings, is the machinery of the power plant. When to this is added the further fact that the maximum county assessment of the machinery of the power plant, together with and including the house and barn, was only $15,000,

whereas the "machinery" alone of the personal property lists was assessed at $40,000, clear proof ought to be required as to the identity of the two assessments. We think it clear that the evidence does not furnish it in respect to the assessments by the county of Pierce; nor, in our opinion, is it sufficient to show that the city assessment of "personal property" to the amounts of $84,170 and $50.500 for the years 1892 and 1893, respectively, included the power plant, assessed during each of the same years at $15,000 as "improvements on real estate." The judgment is affirmed.